United States District Court
Southern District of Texas

**ENTERED**

April 11, 2024

Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN M. McMAHAN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 4:22-CV-01525 |
| | § | |
| U.S. BANK NATIONAL ASSOCIATION, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | | |

### MEMORANDUM AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

In this case, Plaintiff seeks to prevent foreclosure of the mortgage on his house. Intervenor U.S. Bank Trust National Association, not in its Individual Capacity but Solely as Owner Trustee for RCF 2 Acquisition Trust ("Intervenor"), the current mortgagee, has moved for summary judgment.  (Doc. No. 56.)  The undersigned recommends that the district court GRANT that motion.  Additionally, the district court should GRANT Plaintiff's *pro se* motion to dismiss his counsel but DENY Plaintiff's *pro se* motion for continuance (construed as a motion for leave to amend the complaint).  (Doc. Nos. 70, 71.)

### A. Jurisdiction.

The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as well as supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

1 / 70

**B. Background and procedural history.**

This case began when Plaintiff sought to prevent the foreclosure on his house, located at 20318 Sunny Shores Drive in Humble, Texas (the "Property"). Represented by counsel, Plaintiff filed suit in Texas state court on May 2, 2022 to prevent a foreclosure and sale of the Property that was scheduled for either that day or the following day. (Doc. No. 1-1, pp. 6, 10 (Plaintiff's original petition in state court).) The defendants were "U.S. Bank National Association, not in its Individual Capacity but solely as Trustee for the RMAC Trust, Series 2016-CTT" (referred to here as "US Bank-RMAC") along with Rushmore Loan Management Services ("Rushmore"), AVT Title Services LLC, and Seterus, Inc. *Id*. at 7. Plaintiff's state court petition sought declaratory and injunctive relief, and alleged that the defendants (US Bank-RMAC, Rushmore, AVT Title Services, and Seterus) failed to provide proper notice of default of the mortgage loan, failed to provide proper notice of the acceleration of that loan, and failed to provide an opportunity to cure any default. *Id*. at 11-13. Plaintiff also asserted that he had been pressured into signing a loan modification under duress. *Id*. at 10, 14. In addition to requesting that the defendants be "ordered to pay actual damages for breach of contract and negligent misrepresentations," Plaintiff sought and obtained a temporary restraining order from the state court, halting the foreclosure and sale pending the litigation. *Id*. at 15, 31-32. US Bank-RMAC then removed the case to this Court based on diversity of citizenship.[1] (Doc. No. 1, pp. 2-8.)

---

[1]  In the notice of removal, Plaintiff is described as a citizen of Texas, and Plaintiff has not contested this assertion. (Doc. No. 1, p. 2.) US Bank-RMAC asserted that under applicable law it was a citizen of Ohio. *Id*. at 3. Rushmore is described, without objection, as a Delaware limited liability company. (Doc. No. 2, p. 2.) Seterus is described, without objection, as a "defunct corporation." *Id*. Seterus has previously been found to have been a Delaware corporation headquartered in Oregon. *See Harris v. Chase Bank USA, N.A.*, Civ. No. 12-669, 2012 WL 1005017, at *1 (D. Minn. Mar. 26, 2012). AVT Title Services, although apparently a Texas limited liability company, is alleged to be improperly joined because it was merely a trustee for US Bank-RMAC. *See* Doc. No. 1, pp. 5-6 (citing *Associated Ins. Mgmt. Corp. v. Arkansas Gen. Agency*, 149 F.3d 794, 796 (8th Cir. 1998)). Review of Plaintiff's state court petition reveals that he has alleged no conduct of any kind by AVT, *see* Doc. No. 1-1, and the undersigned concludes that Plaintiff fails to state any claim against AVT and that AVT is improperly joined; AVT's

On August 15, 2022, with the district court's permission and without opposition, U.S. Bank Trust National Association, not in its Individual Capacity but Solely as Trustee for RCF 2 Acquisition Trust (the "Intervenor") intervened in this case, filing a complaint for breach of contract and judicial foreclosure and a third-party complaint against Plaintiff and his former wife, Beth Anne Songer ("Songer," who was listed on the mortgage as a co-borrower) and against the Internal Revenue Service (which had a tax lien on Plaintiff's property).  (Doc. No. 18.)  Intervenor had been assigned the deed of trust and mortgage on the Property on June 15, 2022, after Plaintiff had filed this lawsuit.  *See* Doc. No. 16, p. 3; Doc. No. 16-1, p. 31.  In addition to judicial foreclosure, Intervenor seeks a declaration that it is the owner and holder of Plaintiff's promissory note and the beneficiary of the deed of trust, and that its interest in the Property is superior to that of the IRS or any other interests.  (Doc. No. 18, pp. 6-7.)  Attached to Intervenor's August 2022 complaint are the mortgage note, including four "allonges"[2] (Doc. No. 18-1), the Deed of Trust (Doc. No. 18-2), the assignment of the deed of trust to Intervenor (Doc. No. 18-3), evidence of past assignments of the Deed of Trust (Doc. No. 18-4), and a notice of federal tax lien (Doc. No. 18-5).  As additional relief, Intervenor seeks a judgment of foreclosure and an order of sale, as well as attorney fees, costs, and expenses.  (Doc. No. 18, pp. 7-8.)

In September 2022, after a joint stipulation by the parties (Doc. No. 22), the district court dismissed US Bank-RMAC and Rushmore Loan Services from this case without prejudice. (Doc. No. 23.)

---

citizenship can therefore be ignored for diversity purposes. *Cf. Scarlott v. Ocwen Loan Servicing, LLC*, Civ. No. H-13-2742, 2014 WL 109409, at *2, 5 (S.D. Tex. Jan. 10, 2014) (Atlas, J.) (in removed case where AVT had been named as a non-diverse defendant, Rule 12(b)(6)-type review of complaint revealed no factual allegations against AVT, and thus that AVT was improperly joined and its citizenship would be ignored for diversity purposes).

[2] An "allonge" is "a sort of appendix to a bill or note, … a written modification of a note."  10 C.J.S. Bills and Notes § 4 (Aug. 2023).

Intervenor moved for summary judgment in February 2023.  (Doc. Nos. 32, 33.)  After the district court granted Plaintiff's *pro se* motion to dismiss his counsel, *see* Doc. No. 49, Intervenor re-filed its summary judgment motion (the instant motion).  (Doc. Nos. 56, 57.)[3] Plaintiff, through new counsel, responded to that motion on November 14.  (Doc. No. 61.)[4] Intervenor filed a reply to Plaintiff's response to the summary judgment motion on November 17.  (Doc. No. 62.)

In December 2022, during discovery, Intervenor sent a request for admissions to Plaintiff, through Plaintiff's original counsel.  (Doc. No. 57, pp. 219-20, 223-66.)  That request for admissions was sent to Plaintiff's then-counsel by certified mail, return receipt requested, and also by email to Plaintiff's then-counsel.  *Id*. at 219-20, 267-70, 272.  As of February 2, 2023, Plaintiff had not responded to the request for admissions.  *Id*. at 220.  Plaintiff hired new counsel (his current counsel) not later than late October 2023.  *See* Doc. No. 58 (counsel's motion to appear *pro hac vice*).  Counsel has not moved to withdraw or amend any deemed admissions. *See* Fed. R. Civ. P. 36(b).

---

[3]  In the summary judgment motion, Intervenor states that it has reached a settlement agreement with Songer, Plaintiff's former wife.  Songer agreed to the foreclosure and waived any claims that the loan or any modifications are unenforceable, and Intervenor agreed not to seek recovery of any deficiency from Songer.  (Doc. No. 56, pp. 16, 17-18 & nn. 2, 3.)

[4]  On behalf of the IRS, the United States also responded to Intervenor's summary judgment motion.  Although stating that it does not oppose Intervenor's requested relief, the United States asked that if Intervenor's summary judgment motion is granted, the Court recognize that the IRS' statutory right of redemption remains in effect and order that any excess proceeds after sale of the house be paid to the United States Treasury towards the tax lien. (Doc. Nos. 59, 59-1.)

### C. Evidence submitted.

#### 1. Intervenor's summary judgment evidence.

Intervenor has submitted the following evidence in support of its motion for summary judgment:

- A declaration from Amanda Harvey, a "Contested Default Case Manager" for Selene Finance LP, the current servicer of Plaintiff's mortgage.  In her declaration, made under penalty of perjury, Ms. Harvey outlines the history of the mortgage and its assignments and servicers, as well as Plaintiff's loan modification, his bankruptcy filings, his alleged default, and the mortgage's acceleration.  (Doc. No. 57, pp. 6-17 ("Harvey declaration").) Attached to the Harvey declaration are 19 exhibits:

  - Plaintiff's mortgage Note, endorsements, and allonges (Doc. No. 57, pp. 19-24) ("Harvey Exhibit A-1");

  - the Deed of Trust (Doc. No. 57, pp. 26-35) ("Harvey Exhibit A-2");

  - the assignment of the Deed of Trust to Intervenor (Doc. No. 57, pp. 37-40) ("Harvey Exhibit A-3");

  - documents showing the past assignments of Plaintiff's Deed of Trust (Doc. No.57, pp. 42-64) ("Harvey Exhibit A-4");

  - the special warranty deed executed by Songer on July 12, 2005, conveying her interest in the Property to Plaintiff (Doc. No. 57, pp. 66-70) ("Harvey Exhibit A-5");

  - the loan modification (Doc. No. 57, pp. 72-77) ("Harvey Exhibit A-6");

  - a payment history maintained by defendant Seterus, dated May 5, 2016 (Doc. No. 57, pp. 79-88) ("Harvey Exhibit A-7");

o   a September 13, 2018 letter from Seterus to Plaintiff, outlining the terms and
     amounts due under the modified mortgage loan (Doc. No. 57, p. 90) ("Harvey
     Exhibit A-8");

o   a servicing transfer letter showing transfer of the mortgage's servicing from
     Rushmore to Selene Finance, dated May 25, 2022 (Doc. No. 57, pp. 93-106)
     ("Harvey Exhibit A-9");

o   a "payoff statement" reflecting the payoff amount for Plaintiff's mortgage loan as
     of October 19, 2023 (Doc. No. 57, pp. 108-13) ("Harvey Exhibit A-10");

o   a Rushmore customer activity account statement, dated August 27, 2018,
     reflecting activity on Plaintiff's mortgage loan from May 2016 through August
     2018 (Doc. No. 57, pp. 115-29) ("Harvey Exhibit A-11");

o   a Rushmore customer activity account statement, dated January 17, 2023,
     reflecting activity on Plaintiff's mortgage loan from August 2018 through June
     2022 (Doc. No. 57, pp. 131-57) ("Harvey Exhibit A-12");

o   a Selene Finance and Rushmore transaction history for Plaintiff's mortgage loan
     from May 2016 through January 2023 (Doc. No. 57, pp. 159-74) ("Harvey
     Exhibit A-13");

o   a Selene Finance customer activity statement for Plaintiff's mortgage loan from
     May 2016 through October 2023 (Doc. No. 57, pp. 176-81) ("Harvey Exhibit A-
     14");

o   an Escrow/Corporate Breakdown for Plaintiff's mortgage loan, dated through
     September 29, 2023 (Doc. No. 57, pp. 183-91) ("Harvey Exhibit A-15");

- o   Rushmore's notice of intent to accelerate Plaintiff's mortgage loan, dated June 20, 2016 (Doc. No. 57, pp. 193-99) ("Harvey Exhibit A-16");

- o   the notices of acceleration on Plaintiff's mortgage loan, dated December 11, 2019 (Doc. No. 57, pp. 201-02) ("Harvey Exhibit A-17");

- o   the federal tax lien on Plaintiff's property, dated April 23, 2018 (Doc. No. 57, pp. 204-06) ("Harvey Exhibit A-18"); and

- o   the settlement agreement and release between Intervenor and Songer (Doc. No. 57, pp. 208-17) ("Harvey Exhibit A-19").

- A declaration by Intervenor's counsel made under penalty of perjury, outlining discovery requests propounded to Plaintiff through counsel but which went without response, as well as copies of that propounded discovery.  (Doc. No. 57, pp. 219-20; *id*. at 222-361.)

Plaintiff has not objected to Intervenor's summary judgment evidence.

### 2. Plaintiff's summary judgment evidence.

With his response to Intervenor's motion for summary judgment, Plaintiff submitted the following evidence:

- an undated note allonge, without loan numbers, from Federal National Mortgage Association (by Rushmore, its appointed attorney-in-fact) to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, Not Individually But As Trustee for Carlsbad Funding Mortgage Trust (Doc. No. 61-1);

- a series of other undated note allonges (Doc. No. 61-2):

- o   an undated note allonge with loan numbers and handwritten notations, from Federal National Mortgage Association (by Rushmore, its appointed attorney-in-fact) to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, Not

Individually But As Trustee for Carlsbad Funding Mortgage Trust (Doc. No. 61-2, p. 1);

    o   an undated note allonge endorsed in blank from Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, Not Individually But As Trustee for Carlsbad Funding Mortgage Trust (by Rushmore, its appointed attorney-in-fact) (Doc. No. 61-2, p. 2);

    o   an undated note allonge endorsed in blank from Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, Not Individually But As Trustee for Carlsbad Funding Mortgage Trust (by MTGLQ Investors L.P., its attorney-in-fact) (Doc. No. 61-2, p. 3);

    o   an undated note allonge endorsed to Federal National Mortgage Association from JP Morgan Chase Bank, National Association s/b/m Chase Home Finance LLC, s/b/m to Chase Manhattan Mortgage Corporation, s/b/m to Chase Mortgage Company, f/k/a Chemical Mortgage company (Doc. No. 61-2, p. 4);

- a letter from Seterus to Plaintiff and Songer dated May 20, 2015, offering a loan modification (Doc. No. 61-3);

- a Seterus account statement for Plaintiff's mortgage loan dated March 15, 2016, showing an amount due of $71,608.29 (Doc. No. 61-4);

- the loan modification agreement for Plaintiff's mortgage loan, dated May 20, 2015 (Doc. No. 61-5);

- a letter from Plaintiff to "Fannie Mae, Legal Dept" dated September 2, 2019, regarding whether there had been a valid loan modification during Fannie Mae's ownership of Plaintiff's mortgage (Doc. No. 61-6);

8 / 70

- a letter purportedly from Fannie Mae's associate general counsel, responding to Plaintiff's September 2, 2019 letter (Doc. No. 61-7);

- a letter from Plaintiff to Rushmore dated September 6, 2021, asking Rushmore to remove negative credit reporting on Songer regarding Plaintiff's mortgage loan and contesting the validity of the loan modification (Doc. No. 61-8);

- a complaint of identity theft allegedly made by Plaintiff to a Harris County deputy constable on December 3, 2021 (Doc. No. 61-9);

- an excerpt from a publication called "Selling Guide," apparently printed from an unidentified web site at an unspecified time (Doc. No. 61-10);

- an internet printout of a May 8, 2015 HousingWire.com news article regarding Fannie Mae's interest rates for mortgage loan modifications (Doc. No. 61-11);

- two additional note allonges, apparently the same allonges as those attached as Doc. No. 61-1 and page 1 of Doc. No. 61-2 (Doc. No. 61-12);

- an August 6, 2018 letter from Plaintiff to Seterus, requesting an accounting of the calculation of the mortgage loan's principal balance after the modification (Doc. No. 61-13); and

- an excerpt of Seterus' payment history of Plaintiff's mortgage loan (apparently an excerpt of the same document attached by Intervenor as Harvey Exhibit A-7), with handwritten notes and highlighting (Doc. No. 61-14).

As discussed below, Intervenor urges the Court not to consider Plaintiff's submitted evidence and to strike it. *See* Doc. No. 62, pp. 7-10.

### 3. *Plaintiff's deemed admissions.*

As discussed above, Intervenor sent a request for admissions to Plaintiff, through Plaintiff's then-counsel, by certified mail and email on December 30, 2022.  (Doc. No. 57, pp. 219-20 (Declaration of Jason Sanders); *see* Fed. R. Civ. P. 36(a).)  Plaintiff had not responded to the request for admissions by February 2, 2023, *id.* at 220, and there is no indication that he has responded to them since that time, either.

In its motion for summary judgment, Intervenor highlights this fact and seeks to use the "deemed admissions" as summary judgment evidence.  (Doc. No. 56, pp. 30-31; *see* Fed. R. Civ. P. 36(b).)  Plaintiff, through new counsel, has not moved to withdraw or amend those deemed admissions.

Summarized, the deemed admissions are the following:

- Plaintiff is currently in default under the Note, mortgage loan, and Deed of Trust for failing to make monthly payments as required under the Note;

- Plaintiff has not made a payment on the mortgage loan for more than six years;

- Plaintiff owed $108,812.05 on the mortgage loan as of June 1, 2015, and that $52,019.76 was properly added to the loan balance under the loan modification;

- Plaintiff owed $228,610.67 on the mortgage loan as of December 5, 2022;

- Plaintiff does not assert any claims against Intervenor in this lawsuit;

- Intervenor is entitled to foreclose on the Property under the Deed of Trust;

- Plaintiff has no defenses to foreclosure under the Deed of Trust;

- Intervenor has performed all of its obligations under the Note and Deed of Trust; and

- Intervenor sent all required notices of default, notices of intent to accelerate, notices of acceleration, and notices of foreclosure sale required by the Deed of Trust.

*See* Doc. No. 57, pp. 243-46.

### D. *Arguments of the parties.*

#### 1. *Intervenor's motion for summary judgment.*

Intervenor contends that the documents in this case straightforwardly demonstrate that Plaintiff defaulted on his mortgage loan and that foreclosure is appropriate. Intervenor's argument, with citations to its summary judgment evidence, are set forth here.

Intervenor contends that Plaintiff and Songer executed an $87,400 note to Home Trust Company in June 1992 (the "Note"). (Doc. No. 56, p. 11; Doc. No. 57, pp. 7 (Harvey Declaration), 19-24 (Harvey Exhibit A-1).) The Note was secured by a deed of trust on the Property (the "Deed of Trust"). (Doc. No. 56, p. 12; Doc. No. 57, pp. 8 (Harvey Declaration), 26-35 (Harvey Exhibit A-2).) The Note required Plaintiff and Songer to pay monthly principal and interest payments on the Property. (Doc. No. 56, p. 11; Doc. No. 57, pp. 7-8 (Harvey Declaration), 19 (Harvey Exhibit A-1).) The Note's terms provided for default if Plaintiff and Songer failed to pay the full amount of each monthly payment on the date it was due. (Doc. No. 56, pp. 11-12; Doc. No. 57, pp. 8 (Harvey Declaration), 19 (Harvey Exhibit A-1).) The Note and the Deed of Trust both permitted acceleration of the Note in the event of default. (Doc. No. 56, p. 12; Doc. No. 57, pp. 8 (Harvey Declaration), 19, 29 (Harvey Exhibits A-1, A-2).)

The Note, Intervenor says, was subsequently assigned several times: first from Home Trust to Metmor Financial, Incorporated; then from Metmor to Chemical Mortgage Company; then from Chemical Mortgage to Federal National Mortgage Association ("Fannie Mae"); then

from Fannie Mae to Wilmington Savings Fund Society[5]; and then an "in blank" endorsement from Wilmington Savings Fund Society.  (Doc. No. 56, pp. 12-13; Doc. No. 57, pp. 19-24 (Harvey Exhibit A-1).)  The Deed of Trust was assigned multiple times as well: first from Home Trust to Metmor Financial on June 12, 1992; then from Metmor to Chemical Mortgage on June 12, 1995; then from Chemical Mortgage to Fannie Mae on September 23, 2014; then from Fannie Mae to Wilmington Savings Fund Society on June 9, 2016; then from Wilmington Savings Fund Society to MTGLQ Investors, L.P. on January 17, 2020; then from MTGLQ Investors to US Bank-RMAC, also on January 17, 2020; and finally from US Bank-RMAC to Intervenor on June 15, 2022.  (Doc. No. 56, pp. 12-13; Doc. No. 57, pp. 9-10 (Harvey Declaration), 37-40, 42-64 (Harvey Exhibits A-3 and A-4).)

Intervenor contends that the Deed of Trust and each of its subsequent assignments were recorded in the real property records of Harris County, Texas, where the Property is located. (Doc. No. 56, pp. 12-13; Doc. No. 57, pp. 9-10 (Harvey Declaration), 37-40, 42-64 (Harvey Exhibits A-3 and A-4).).

Intervenor states that Songer conveyed her interest in the Property to Plaintiff on July 12, 2005, by executing a special warranty deed, which was also recorded.  (Doc. No. 56, p. 13; Doc. No. 57, pp. 10 (Harvey Declaration), 66-70 (Harvey Exhibit A-5).)

Intervenor contends that Plaintiff signed a loan modification agreement in 2015.  (Doc. No. 56, p. 13; Doc. No. 57, pp. 10 (Harvey Declaration), 72-77 (Harvey Exhibit A-6).) Intervenor's submitted document indicates that Plaintiff signed the modification agreement on August 8, 2015, and that Fannie Mae's authorized signer (a Seterus employee) signed the

---

[5]  "Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, Not Individually But As Trustee for Carlsbad Funding Mortgage Trust" ("Wilmington Savings Fund Society").

agreement on March 23, 2016.  (Doc. No. 57, p. 76.)  The modification agreement stated that the

unpaid principal balance was $108,812.05.  *Id*. at 72.

Intervenor argues that Plaintiff failed to make payments as required under the

modification agreement, starting at least with the payment due on November 1, 2017.  (Doc. No.

56, p. 14; Doc. No. 57, pp. 12 (Harvey Declaration), 108-13 (Harvey Exhibit A-10), 115-29

(Harvey Exhibit A-11), 131-57 (Harvey Exhibit A-12), 176-81 (Harvey Exhibit A-14), 183-91

(Harvey Exhibit A-15).)  Intervenor states that it sent Plaintiff a notice of intent to accelerate the

loan.  (Doc. No. 56, pp. 14-15; Doc. No. 57, pp. 193-99 (Harvey Exhibit A-16).)  Intervenor

contends that Plaintiff failed to cure his default, and so the loan was then accelerated.  (Doc. No.

56, p. 15; Doc. No. 57, pp. 13 (Harvey Declaration), 201-02 (Harvey Exhibit A-17).)

Meanwhile, Intervenor contends, the Internal Revenue Service filed a notice of federal

tax lien, creating a lien on the Property for unpaid federal taxes.  (Doc. No. 56, p. 16; Doc. No.

57, pp. 14 (Harvey Declaration), 204-06 (Harvey Exhibit A-18).)

Intervenor contends that Plaintiff filed bankruptcy cases on at least six different

occasions, and that four of those six cases occurred after Plaintiff entered into the loan

modification.  (Doc. No. 56, p. 14; Doc. No. 57, p. 11 (Harvey Declaration).)

### 2. *Plaintiff's opposition.*

Plaintiff's response to Intervenor's summary judgment motion focuses on alleged

material factual disputes in several respects: the chain of ownership to the note and deed of trust;

the statute of limitations; whether the loan modification was effectuated and properly executed;

whether Intervenor's predecessor in interest complied with the modification's terms; and

whether the amount owing on the loan was accurately reflected.  (Doc. No. 61, p. 2.)

Plaintiff does not dispute that he and Songer signed the Note, or that the Note was secured by the Deed of Trust on the Property.  (Doc. No. 61, pp. 5-6.)  Plaintiff also does not dispute that Home Trust validly assigned the Note and deed of trust to Metmor.  *Id.* at 6.

After that, however, Plaintiff contends, the loan's "chain of title becomes a fact issue." (Doc. No. 61, p. 6.)  This, Plaintiff says, is because of an alleged defect in the transfer of the loan from Chemical Mortgage to Fannie Mae.  Plaintiff contends (and Intervenor notes in its original complaint) that Chemical Mortgage executed an assignment and transfer of the Deed of Trust to Fannie Mae on October 1, 1994; that assignment and transfer was apparently never recorded.  *Id.* Indeed, Plaintiff argues, that assignment and transfer could not have occurred in October 1994, because Chemical Mortgage did not yet own the Note or the Deed of Trust  – Chemical allegedly acquired both in June 1995.  (Doc. No. 61, p. 6; Doc. No. 18-4, p. 6.)  Plaintiff contends that there is no recorded document in the Harris County real property records "correcting, clarifying, or otherwise rescinding" the October 1994 assignment.  (Doc. No. 61, p. 7.)  Plaintiff acknowledges the subsequent assignment and transfer of the loan from Chemical Mortgage (through its successor) to Fannie Mae in 2014, and apparently does not take issue with any of the subsequent assignments or transfers.  *See* Doc. No. 61, pp. 7-8.

Plaintiff contends that a genuine dispute of material fact exists regarding whether Plaintiff's action is barred by limitations.  He argues that his four post-modification bankruptcy cases paused the limitations clock for this action while those cases were pending, and that Plaintiff brought this action while his most recent bankruptcy case was still pending.  (Doc. No. 61, pp. 8-9.)  Thus, Plaintiff argues, "his claims cannot fail due to statute of limitations."  *Id*. at 9.

Plaintiff also contends that genuine and material fact questions remain about whether the loan modification was properly executed and put into place, whether the modification's terms

were complied with by Intervenor's predecessor in interest, and whether the amount owing on the loan is accurately reflected.  Without citation to evidence, he argues that the terms of the modification were different from what he had been led to believe.  (Doc. No. 61, p. 9.)  He also argues that the parties were required to sign off on the modification not later than June 1, 2015, but that the parties did not sign the modification until after Fannie Mae had already assigned and transferred the loan to Wilmington Savings Fund Society.  (Doc. No. 61, pp. 9, 10; Doc. No. 61-3.)  Plaintiff additionally contends that the modification's provisions were never incorporated into subsequent billing statements, which reflected the original loan maturity date.  (Doc. No. 61, p. 10; Doc. No. 61-4, pp. 1, 2.)

Plaintiff also argues that a genuine issue of material fact exists with regard to the amount due on the loan.  He argues that some of his payments were wrongly denied or were misapplied. (Doc. No. 61, pp. 10-11.)[6]  Plaintiff does not contend that his required payments on the loan were current, however, or that it was improper for the loan to be declared in default or accelerated.

Finally, Plaintiff raises questions regarding the validity of the allonge[7] and the loan's assignment and transfer from Fannie Mae to Wilmington Savings Fund Society: Plaintiff argues that the allonge is invalid because it does not show the legal description of the property or the note number.  (Doc. No. 61, p. 11.)  Additionally, Plaintiff contends, Rushmore signed the allonge on behalf of Fannie Mae, an act that Plaintiff claims was in violation of Fannie Mae's own guidelines – as evidence, Plaintiff cites an excerpt from a publication called "Selling Guide," apparently printed from an unidentified web site at an unspecified time.  (Doc. No. 61-

---

[6] Plaintiff does not cite any record evidence on this point.  He does state that he "does not require much time, but does require time to get verified documents from Fannie Mae, et al."  (Doc. No. 61, p. 11.)

[7] Doc. No. 61-1, p. 1.

10).  Plaintiff's proffered excerpt states: "The mortgage seller may not delegate to an attorney-in-fact its authority to execute an endorsement.  The endorsement may not be executed by a party using a power of attorney."  (Doc. No. 61-10, p. 2.)

Plaintiff takes issue with another allonge as well, arguing that the allonge filed with Intervenor's proof of claim showing assignment and transfer of the loan by Fannie Mae to Wilmington Savings Fund Society was altered by the addition of a note number.  (Doc. No. 61, p. 11; Doc. No. 61-2, p. 1; Doc. No. 18-1, p. 5.)  Plaintiff further argues that two other allonges were improperly executed by Wilmington Savings Fund Society because they were executed by two different companies.  (Doc. No. 61, p. 12; Doc. No. 61-2, pp. 2, 3.)

Finally, Plaintiff argues that servicer Seterus provided "irregular statements" with differing amounts due (Doc. No. 61, p. 12; Doc. No. 61-4, pp. 1-2), and that Seterus was punished by the Consumer Financial Protection Bureau for apparent misconduct regarding modified loans.  (Doc. No. 61, p. 12.)

### 3. Intervenor's reply.

Replying to Plaintiff's response to the summary judgment motion, Intervenor urges the Court not to consider Plaintiff's proffered summary judgment evidence because none of his exhibits are authenticated and because they are not self-authenticating.  (Doc. No. 62, pp. 7-8.)  Intervenor further argues that some of the exhibits are inadmissible hearsay.  *Id*. at 9-10.  Intervenor asks the Court to strike Plaintiff's summary judgment exhibits.  *Id*. at 10.

Intervenor also argues that Plaintiff fails to sufficiently identify any fact issue with the chain of title of the note or the deed of trust, and contends that "any purported issue with the assignment of the Deed of Trust from Chemical Mortgage Company to Fannie Mae was cured" when the assignment to Fannie Mae was executed in September 2014.  (Doc. No. 62, p. 11-12 &

n.8.)  Intervenor further argues that Plaintiff lacks standing to challenge assignments of the Deed of Trust (as well as Rushmore's endorsements to the Note, which were purportedly in violation of Fannie Mae's guidelines) because he was not a party to any of those assignments.  *Id.* at 13, 15.  Intervenor additionally argues that it is entitled to foreclosure even if the assignments of the Deed of Trust were invalid, because Intervenor is the holder of the Note.  (Doc. No. 62, p. 16.)

Intervenor contends that Plaintiff's affirmative claims are limitations-barred because Plaintiff failed to present sufficient evidence of the existence of any of his bankruptcy cases. (Doc. No. 62, p. 18.)  Intervenor also argues that the loan modification was effective and valid, and that the parol evidence rule defeats any claim that the terms of the modification differed from the written document.  *Id.* at 18-22.

Finally, Intervenor argues that, because Plaintiff failed to respond to Intervenor's propounded discovery, his deemed admissions are themselves basis for summary judgment. (Doc. No. 62, p. 22.)

Further facts and argument necessary to the disposition of this case are set out below where appropriate.

### E. *Legal standard for summary judgment.*

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion.  *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence or evaluate the credibility of witnesses.  *Id.*  Furthermore, affidavits or declarations "must be made on personal knowledge, [shall] set out facts that would be admissible in evidence, and [shall] show that the affiant or declarant is competent to testify to the matters stated."  Fed. R. Civ. P. 56(c)(4); *see also Cormier v. Pennzoil Expl. & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  Fed. R. Civ. P. 56(c)(1); *Anderson*, 477 U.S. at 248.  Additionally summary judgment "may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence."  *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015).  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if

no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

As discussed above, Plaintiff failed to respond to Intervenor's request for admissions. Each of Intervenor's requested admissions is therefore deemed admitted under Federal Rule of Civil Procedure 36(b). "For Rule 36 to be effective, litigants must be able to rely on the fact that matters admitted will not be challenged in the future." *Grenet v. Farm Lloyds*, Civ. No. H-08-643, 2009 WL 10713308, at *3 (S.D. Tex. Jan. 21, 2009) (Hittner, J.) (citing *Am. Auto Ass'n v. AAA Legal Clinic*, 930 F.2d 1117, 1119 (5th Cir. 1991)). An admission under Rule 36 that is not withdrawn or amended cannot subsequently be rebutted by contrary testimony. *See id.* (citing *Am. Auto Ass'n*, 930 F.2d at 1120). Deemed admissions can be an appropriate basis for granting summary judgment, *see In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001), and they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record. *See Kirwa v. Wells Fargo Bank, N.A.*, No. 4:18-CV-707-ALM-CAN, 2019 WL 2575058, at *3 & n.7 (E.D. Tex. June 3, 2019), *adopted*, 2019 WL 2568611 (E.D. Tex. June 20, 2019) (citing *Carney*, 258 F.3d at 420)). Any matter admitted under Rule 36 is conclusively established unless the court permits withdrawal or amendment by motion in accordance with Rule 36(b), but courts in this circuit lack authority to withdraw or amend deemed admissions *sua sponte*. *See Armour v. Knowles*, 512 F.3d 147, 154 n.13 (5th Cir. 2007); *Cottrell v. Career Inst., Inc.*, 1 F.3d 1237, 1993 WL 310292, at *1 (5th Cir. 1993) (per curiam) (unpublished).

Because this case is before the Court based on diversity jurisdiction, the Court must apply Texas substantive law and federal procedural law. *Rosenberg v. Celotex Corp.*, 767 F.2d 197,

199 (5th Cir. 1985) (citing *Hanna v. Plumer,* 380 U.S. 460 (1965); *Erie Railroad Co. v. Tompkins,* 304 U.S. 64 (1938)).

### F. Objections to summary judgment evidence.

Before evaluating the parties' summary judgment arguments, the Court must first resolve the question of what summary judgment evidence may be properly considered.  Plaintiff does not object to any of Intervenor's submitted summary judgment evidence.  Intervenor, however, argues that Plaintiff's submitted documents, offered in opposition to Intervenor's motion, are not competent summary judgment evidence and should therefore be disregarded and stricken.  (Doc. No. 62, p. 8-10.)  Intervenor also argues that several of the proffered documents are also inadmissible hearsay.  *Id.*

The undersigned declines Intervenor's invitation to simply strike Plaintiff's submitted documents for lack of authentication.  When considering a summary judgment motion, a court seeks "to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant – without imposing on parties the time and expense it takes to authenticate everything in the record."  *Maurer v. Independence Town*, 870 F.3d 380, 384 (5th Cir. 2017). Materials cited to support or dispute a fact therefore need only be capable of being presented in a form that would be admissible in evidence.  *See LSR Consulting, LLC v. Wells Fargo Bank, NA*, 835 F.3d 530, 534 (5th Cir. 2016).  At the summary judgment stage, then, "evidence need not be authenticated or otherwise presented in an admissible form," so long as it is capable of being presented in such form.  *See Maurer*, 870 F.3d at 384.  Intervenor's argument to the contrary relies on pre-*Maurer* case law which in turn relied on a since-superseded version of Federal Rule of Civil Procedure 56.  *See* Doc. No. 62, p. 8 (citing *Madison One Holdings, LLC v. Punch Int'l NV*, No. 4:06-CV-03560, 2009 WL 911984, at *9 (S.D. Tex. Mar. 31, 2009); *Robinson v. City of*

*Garland*, *Tex.*, No. 3:10-CV-2496-M, 2016 WL 1253557, at *4 (N.D. Tex. Feb. 29, 2016), *adopted*, 2016 WL 1271492 (N.D. Tex. Mar. 30, 2016)).

The question, then, is whether Plaintiff's proffered documents or the information they contain are capable of being presented in admissible form at trial (and thus can be considered here for summary judgment purposes). The undersigned concludes that they are, from an authentication standpoint. And with three exceptions, all may also be considered at this stage of the proceedings despite Intervenor's hearsay objections.

### 1. *Note allonge from Fannie Mae to Wilmington Savings Fund Society.*

The first submitted document is an undated note allonge, without loan numbers, from Fannie Mae (by Rushmore, its appointed attorney-in-fact) to Wilmington Savings Fund Society. (Doc. No. 61-1.) Plaintiff contends that this document was offered as a proof of claim submitted by former defendant Rushmore in one of Plaintiff's prior bankruptcy cases. *See* Doc. No. 62, p. 4.

The document is capable of being admitted at trial as authentic. First, the document bears markings indicating that it was filed electronically in one of Plaintiff's bankruptcy cases. *See* Doc. No. 61-1, header. In turn, the Court takes judicial notice that the bankruptcy case record includes this document as part of a proof of claim submitted by Rushmore (the loan servicer for Intervenor's own predecessor in interest) in opposition to confirmation of Plaintiff's bankruptcy plan. *See In re McMahan*, No. 18-33680, Claims Register, Claim No. 6-1, p. 12 (Bankr. S.D. Tex. Sept. 10, 2018). The document is therefore capable of being certified as a court filing and admitted at trial as authentic. *See* Fed. R. Evid. 902(1), (2). Intervenor's authentication objection to consideration of this exhibit for summary judgment purposes is overruled.

### 2. *Other note allonges.*

The next proffered documents are a series of other undated note allonges.  (Doc. No. 61-2.)  Intervenor argues that the allonges are not authenticated.  (Doc. No. 62, p. 9.)  All of these documents are capable of being admitted at trial as authentic.

#### a. *Walters allonge with handwritten notes.*

Plaintiff submits an undated allonge with loan numbers and handwritten notations, from Fannie Mae (by Rushmore, its appointed attorney-in-fact) to Wilmington Savings Fund Society (Doc. No. 61-2, p. 1).  This allonge is purportedly signed by Glenn Walters, Rushmore's Senior Vice President.  *See id*.  Intervenor argues that the document has not been authenticated.  (Doc. No. 62, p. 8.)  But Intervenor attached this same document to its own motion for summary judgment, and authenticated it using the Harvey declaration.  *See* Doc. No. 57, pp. 7, 22.  The document is therefore capable of being introduced at trial as authentic, and Intervenor's authentication objection to consideration of this exhibit for summary judgment purposes is overruled.[8]

#### b. *Segovia allonge.*

Plaintiff next submits an undated note allonge endorsed in blank from Wilmington Savings Fund Society (by Rushmore, its appointed attorney-in-fact) (Doc. No. 61-2, p. 2).  This allonge is purportedly signed by David Segovia, Rushmore's authorized signatory.  *Id*.  Intervenor argues that the allonge is not authenticated.  (Doc. No. 62, pp. 8-9.)  But as with the previous allonge, Intervenor attached this same document to its own motion for summary

---

[8]  Intervenor's authentication objection to this document has zero merit.  This document is literally a copy of an allonge submitted by Intervenor as part of its own complaint in this case.  *See* Doc. No. 18-1, p. 5.  The document even bears the header markings from the Court's electronic case filing system, showing that it was submitted as part of Intervenor's complaint.

judgment, and authenticated it using the Harvey declaration.  *See* Doc. No. 57, pp. 7, 24. Intervenor also attached this document to its complaint.  (Doc. No. 18-1, p. 7.)  The document is therefore capable of being introduced at trial as authentic, and Intervenor's authentication objection to consideration of this exhibit for summary judgment purposes is overruled.

### c. *Rhinehardt allonge.*

Plaintiff next submits an undated note allonge endorsed in blank from Wilmington Savings Fund Society (by MTGLQ Investors L.P., its attorney-in-fact) and purportedly signed by Andrea Rhinehardt, MTGLQ Investors' Vice President.  (Doc. No. 61-2, p. 3.)  Intervenor argues that the document has not been authenticated.  (Doc. No. 62, p. 8.)  But this document was also submitted by Intervenor as part of its complaint (Doc. No. 18-1, p. 6) and with its motion for summary judgment.  (Doc. No. 57, p. 23.)  Intervenor authenticated this document using the Harvey declaration.  (Doc. No. 57, p. 7.)  Intervenor's authentication objection to consideration of this document for summary judgment purposes is overruled.[9]

### d. *Littleton allonge.*

Plaintiff next submits an undated note allonge endorsed to Fannie Mae from JP Morgan Chase Bank as the successor in interest to Chemical Mortgage Company and purportedly signed by Adam Littleton, JPMorgan Chase's Vice President – Document Execution.  (Doc. No. 61-2, p. 4.)  Intervenor argues that this document has not been authenticated.  (Doc. No. 62, pp. 8-9.) The document is attached to Intervenor's complaint and to its motion for summary judgment. (Doc. Nos. 18-1, p. 4; Doc. No. 57, p. 21.)  Intervenor authenticated this document in its summary judgment motion using the Harvey declaration.  (Doc. No. 57, p. 7.)  Intervenor's

---

[9]  *See* note 8, above.

authentication objection to consideration of this document for summary judgment purposes is overruled.[10]

### 3. *Seterus letter.*

Plaintiff next submits a May 20, 2015 letter from Seterus, offering the loan modification. (Doc. No. 61-3.)  Intervenor argues that the letter has not been authenticated and that it constitutes inadmissible hearsay because it is allegedly offered for the truth of its contents.  (Doc. No. 62, p. 9.)  The letter can readily be authenticated by testimony from Plaintiff that he received the letter.  *See* Fed. R. Evid. 901(b)(1); *King v. Jarrett*, No. A-15-CV-00491-LY-ML, 2015 WL 5794021, at *5 (W.D. Tex. Oct. 1, 2015), *adopted*, 2015 WL 13805121 (W.D. Tex. Oct. 29, 2015).  Intervenor's authentication objection is overruled.

Intervenor's hearsay objection is also overruled.  Plaintiff only points to one portion of the Seterus letter as being relevant: the letter states that the modification agreement must be signed and returned by June 1, 2015; if Seterus did not receive the signed agreement by then, the letter continues, then Seterus "may revoke [its] offer, not accept the Agreement[s], and [it] will be considered null and void.  We are not obligated to renew this offer."  (Doc. No. 61-3, p. 1.)  The letter bears the loan number and states that the loan is being serviced by Seterus.  *Id*. Seterus is still a party in this case.  As discussed below, Plaintiff appears to offer the letter to show that the modification was executed in contravention of the letter's terms.  *See* Doc. No. 61, p. 9.

"Hearsay" is an out-of-court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c).  Certain types of statements, although fitting this description, are not considered hearsay.  Among them are declarations by party opponents.  *See* Fed. R. Evid.

---

[10] *See* notes 8 and 9, above.

801(d)(2).  Federal Rule of Evidence 801(d)(2)(C) allows admission of statements that are

offered against a party and that were made by a person whom the party authorized to make a

statement on the subject; likewise, Rule 801(d)(2)(D) allows admission of statements made by a

party's agent on a matter within the scope of that relationship and while the relationship existed.

Here, though, it is unnecessary to determine whether the statements in the letter are inadmissible

hearsay.  This is because the standard on summary judgment is whether the challenged

information is capable of being presented in a form that would be admissible in evidence.  *See*

*LSR Consulting*, 835 F.3d at 534; *see also Maurer*, 870 F.3d at 384.  In this case, it is: Plaintiff

could readily lay the foundation for admission of the letter or its conveyed information as a party

admission.  *See* Fed. R. Evid. 801(d)(2)(D); *cf. People's Cap. and Leasing Corp. v. McClung*,

No. 5:17-cv-484-OLG, 2018 WL 2996902, at *2 (W.D. Tex. May 4, 2018); *Frankel v. Wells*

*Fargo Bank, N.A.*, Civ. No. 14-2886, 2017 WL 11713703, at *4 n.2 (S.D. Tex. Feb. 6, 2017)

(Stacy, M.J.).[11]

### 4.  *Seterus account statement.*

Plaintiff next submits an account statement he allegedly received from Seterus.  (Doc.

No. 61-4.)  That document purports to show, Plaintiff argues, that the modification's terms were

never incorporated into subsequent billing statements and that Seterus provided "irregular

statements, at times only [15] days apart."  (Doc. No. 61, pp. 10, 12.)  Intervenor argues that the

statement has not been authenticated and that it is inadmissible hearsay.  (Doc. No. 62, p. 9.)

---

[11]  Ultimately, the Court's consideration of this Seterus letter does not change the outcome.  As will be discussed
below, the modification was not improperly consummated because the letter does not purport to automatically
revoke the modification offer if the modification is not completed by a date certain.

Intervenor's authentication objection is overruled. The statement can readily be authenticated by testimony from Plaintiff that he received the statement. *See* Fed. R. Evid. 901(b)(1); *King*, 2015 WL 5794021, at *5.

Intervenor's hearsay objection is also overruled. The account statement is not offered for the truth of the matter asserted in that statement – that is, the amount Plaintiff actually owed on his mortgage loan. Rather, Plaintiff submits the account statement to show that Seterus did not account for the loan modification after it was signed, and to argue that Seterus' billing practices were generally irregular. *Cf. Pruco Life Ins. Co. v. Villarreal*, Civ. No. H-17-2795, 2021 WL 4155250, at *8 (S.D. Tex. Sept. 13, 2021) (Rosenthal, C.J.) (hearsay objection overruled at summary judgment stage where proffered document not offered for the truth of the document's contents).

### 5. *Loan modification agreement.*

Plaintiff next submits a copy of the loan modification agreement. (Doc. No. 61-5.) Intervenor argues that the document is not authenticated, and that Plaintiff "does not provide a purpose for attaching" it. (Doc. No. 62, p. 9.)

Intervenor's authentication objection is overruled. The modification document has already been made part of the record in this case by Intervenor itself and has been authenticated through the Harvey declaration. (Doc. No. 57, pp. 10, 72-77.)

### 6. *Plaintiff's letters with Fannie Mae legal department.*

Plaintiff next submits a letter he allegedly wrote to "Fannie Mae, Legal Dept" dated September 2, 2019, regarding whether there had been a valid loan modification during Fannie Mae's ownership of Plaintiff's mortgage. (Doc. No. 61-6.) He also submits a September 26, 2019 letter he allegedly received from Fannie Mae in response. (Doc. No. 61-7.) Intervenor

argues that the letters are not authenticated and that they are inadmissible hearsay.  (Doc. No. 62, pp. 9-10.)

Intervenor's authentication objections are overruled.  The letters are capable of being authenticated for purposes of admission at trial, through testimony from Plaintiff that he sent the letter to Fannie Mae and that he received the proffered response.

Intervenor's hearsay objection to Plaintiff's letter to Fannie Mae (Doc. No. 61-6) is also overruled.  Plaintiff's letter can be considered at the summary judgment stage because the same information is capable of being adduced at trial, in the form of testimony from Plaintiff that he contacted Fannie Mae and asked them to confirm that no loan modification was effectuated while Fannie Mae owned Plaintiff's mortgage loan.  The letter can also be considered to show Plaintiff's intent in contacting Fannie Mae.

Intervenor's hearsay objection to Fannie Mae's response (Doc. No. 61-7), though, is sustained.  Fannie Mae's letter, Plaintiff contends, states that as of the date of Fannie Mae's sale of Plaintiff's mortgage loan, "Plaintiff's unpaid principal balance was $55,694.14.  There are three [] different amounts, and it is a question of fact as to which is the correct one."  (Doc. No. 61, p. 10.)  Plaintiff therefore is offering Fannie Mae's letter for the truth of the matter asserted – the alleged amount due under the loan.  Fannie Mae is not a party to this action, so Plaintiff does not seek to offer the letter against Fannie Mae here as a party opponent.  Rather, Fannie Mae is a predecessor in interest to Intervenor.  Research has revealed no decision by any court in this circuit on the question, but the plain language of Federal Rule of Evidence 801(d)(2) does not include statements by predecessors in interest among the types of statements the rule makes admissible.  Accordingly, the letter is inadmissible hearsay, and the undersigned will not consider it.  *Cf. Three Rivers Confections, LLC v. Warman*, 660 F. App'x 103, 109 (3d Cir.

2016); *Calhoun v. Baylor*, 646 F.2d 1158, 1162 (6th Cir. 1981) ("Rule 801(d)(2) does not include statements by predecessors in interest among the types of statements the rule makes admissible."); *Huff v. White Motor Corp.*, 609 F.2d 286, 290-91 (7th Cir. 1979); *see also Saugatuck, LLC v. St. Mary's Commons Assocs., L.L.C.*, No. 17-cv-217, 2023 WL 4564879, at *2 (E.D.N.Y. July 17, 2023) (tracing rule's evolution and case law).

### 7. *Plaintiff's letter to Rushmore.*

Plaintiff next submits a letter dated September 6, 2021, which he claims to have sent to Rushmore.  The letter asks Rushmore to remove negative credit reporting on Songer regarding Plaintiff's mortgage loan and contests the validity of the loan modification.  (Doc. No. 61-8.) Intervenor objects that the letter is not authenticated, and that it contains inadmissible hearsay. (Doc. No. 62, p. 9.)

Intervenor's authentication objection is overruled.  The letter is capable of being authenticated for purposes of admission at trial, through testimony from Plaintiff that he sent the letter.

Intervenor's hearsay objection, however, is sustained to the extent the letter is offered for the truth of its contents.  No hearsay exception or exemption appears to apply to the statements contained in the letter.  The undersigned will consider the letter only to the extent it shows that Plaintiff contacted Rushmore to dispute the loan modification and to request a full release of his mortgage lien on the Property.  *See* Doc. No. 61-8, pp. 1, 4, 5.

### 8. *Identity theft complaint.*

Plaintiff next submits a copy of a complaint he made to a Harris County deputy constable in December 2021.  In that complaint, Plaintiff alleges various instances of fraud in the loan documents.  (Doc. No. 61-9.)  Through counsel, Plaintiff states that he submitted this complaint

on the advice of Rushmore's legal department if he was concerned about fraud.  (Doc. No. 61, p. 10.)  Intervenor objects that the document is not authenticated and that it contains inadmissible hearsay.  (Doc. No. 62, p. 9.)

Intervenor's authentication objection is overruled.  The identity theft complaint is capable of being authenticated for purposes of admission at trial, through testimony from Plaintiff that he filed the complaint.

Intervenor's hearsay objection, however, is sustained to the extent the complaint is offered for the truth of its contents.  No hearsay exception or exemption appears to apply to the statements contained in the complaint.  The undersigned will consider the identity theft complaint only to the extent it shows that Plaintiff submitted it.

### 9.  *"Selling Guide" excerpt.*

Plaintiff next submits an excerpt purportedly from a publication called "Selling Guide," apparently printed from an unidentified web site at an unspecified time.  (Doc. No. 61-10.)  Intervenor objects that the excerpt is not authenticated and that it contains inadmissible hearsay – specifically, that Fannie Mae does not permit endorsements to be signed by an attorney-in-fact.  (Doc. No. 62, p. 10.)

Intervenor's authentication objection is overruled.  Fannie Mae's Selling Guide is capable of being authenticated for purposes of trial – it is posted on Fannie Mae's publicly available web site.[12]

Intervenor's hearsay objection is also overruled.  The Selling Guide is capable of being judicially noticed.  It is "published by a quasi-governmental entity and is a matter of public record that can be accurately and readily determined from many sources, namely Fannie Mae,

---

[12]  *See* https://singlefamily.fanniemae.com/media/38401/display (last visited Apr. 10, 2024).

whose accuracy cannot reasonably be questioned."  *Robbins v. CitiMortgage, Inc.*, No. 16-CV-04732-LHK, 2017 WL 6513662, at *4 (N.D. Cal. Dec. 20, 2017) (taking judicial notice of Selling Guide).

### 10. *HousingWire.com article.*

Plaintiff next submits an internet printout of a news article on a website called HousingWire.com.  (Doc. No. 61-11.)  That article, dated May 8, 2015, states that beginning on May 14, 2015, "Fannie Mae will drop its required interest rate for standard modifications from 4.125% to 4%."  (Doc. No. 61-11, p. 1.)  Intervenor argues that the article is not authenticated. (Doc. No. 62, p. 10.)

Intervenor's authentication objection is overruled for purposes of summary judgment. The article does not appear to be self-authenticating: there is no indication that HousingWire.com is a newspaper or periodical.  *See* Fed. R. Evid. 902(6); *Specht v. Google, Inc.*, 758 F. Supp. 2d 570, 582-83 (N.D. Ill. 2010) (news story from Forbes.com not self-authenticating).  But it is unnecessary to decide whether a news article taken from a web printout is self-authenticating, because this particular article is capable of being authenticated at trial through testimony from Plaintiff that he accessed and printed the article from the HousingWire.com web site.[13]

### 11. *Additional allonges.*

Plaintiff next offers two more note allonges.  One appears to have been taken from Plaintiff's 2018 bankruptcy case.  (Doc. No. 61-12, p. 1.)  The other appears to have been taken from Intervenor's complaint.  (Doc. No. 61-12, p. 2; *see* Doc. No. 16-1, p. 17.)  Intervenor objects that the allonges have not been authenticated.  (Doc. No. 62, p. 8.)

---

[13]  Intervenor has lodged no hearsay objection to the article.

The authentication objection is overruled.  The first allonge is the same document as the one that the Court previously determined that it would consider.  *See* Doc. No. 61-1.  It bears markings indicating that it was filed electronically in one of Plaintiff's bankruptcy cases.  *See* Doc. No. 61-12, p. 1, header.  In turn, as with document number 61-1, the Court takes judicial notice that the bankruptcy case record includes this document as part of a proof of claim submitted by Rushmore (the loan servicer for Intervenor's own predecessor in interest) in opposition to confirmation of Plaintiff's bankruptcy plan.  *See In re McMahan*, No. 18-33680, Claims Register, Claim No. 6-1, p. 12 (Bankr. S.D. Tex. Sept. 10, 2018).  The document is therefore capable of being certified as a court filing and admitted at trial as authentic.  *See* Fed. R. Evid. 902(1), (2).

The authentication objection to the second allonge is also overruled.  Intervenor attached this same document to its own motion for summary judgment and authenticated it using the Harvey declaration.  *See* Doc. No. 57, pp. 7, 22.  The document is therefore capable of being introduced at trial as authentic.

### *12.  Plaintiff's 2018 letter to Seterus.*

Plaintiff next submits a letter he allegedly wrote to Seterus on August 6, 2018, asking how the new principal balance on his modified loan was calculated.  (Doc. No. 61-13.)  Intervenor objects that the letter is not authenticated.  (Doc. No. 62, p. 9.)  Intervenor lodges no other objection to this document.

The authentication objection is overruled.  The letter is capable of being authenticated by Plaintiff through testimony that he sent the letter.

### 13.  Seterus "reversal of payments."

Finally, Plaintiff offers what appears to be a May 5, 2016 payment history report, which he claims was generated by Seterus.  The document contains various highlighted portions and handwritten notes, apparently made by Plaintiff himself.  (Doc. No. 61-14.)  Intervenor argues that the report is not properly authenticated.  (Doc. No. 62, p. 9.)  Intervenor makes no other objection to the report.

The authentication objection is overruled.  The printout (other than the highlighting and handwritten notes) is identical to three pages of the same printout submitted by Intervenor with its motion for summary judgment.  (Doc. No. 57, pp. 80-82.)  Intervenor authenticated that printout through the Harvey declaration.  *Id*. at 10.

### 14.  Recap.

To summarize, the undersigned will consider all of Plaintiff's submitted summary judgment evidence, except for Fannie Mae's response letter (Doc. No. 61-7), which is hearsay, and Plaintiff's letter to Rushmore (Doc. No. 61-8), to the extent that it is offered to prove the truth of its contents.  The undersigned likewise will not consider Plaintiff's identity theft complaint for the truth of any statement contained in that complaint.  (Doc. No. 61-9.)  The undersigned will consider the remainder of the documents submitted by the parties in evaluating whether summary judgment is appropriate.

### G.  Discussion.

As discussed next, the submitted and competent summary judgment evidence reflects that there is no genuine issue of material fact regarding Intervenor's bid to foreclose on the Property.  Additionally, Plaintiff fails to raise a genuine issue of material fact that could defeat summary judgment.

### *1.  Intervenor has shown that it is entitled to foreclose on the Property.  Plaintiff fails to raise a genuine issue of material fact to the contrary.*

Intervenor has demonstrated through proper presentation of evidence that it is entitled to judgment as a matter of law on its claim for foreclosure on the Property.  A lender seeking to foreclose under a security instrument with a power of sale must demonstrate that (1) the debt exists, (2) the debt is secured by a lien created under Texas law, (3) the mortgagor is in default under the note and security instrument, and (4) the mortgagor was properly served with notice of default and acceleration.  *See Aguilar v. Franklin Credit Mortg. Corp.*, No. 4:21-CV-02568, 2022 WL 1570014, at *4 (S.D. Tex. May 18, 2022) (Eskridge, J.) (citing *Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013) (Miller, J.)).  The moving party must also demonstrate that it is the proper party to foreclose.  *Deutsche Bank Nat'l Trust Co. v. Emerson*, No. 5:18-CV-209-XR, 2019 WL 2774337, at *2 (W.D. Tex. July 1, 2019).  Here, Intervenor has satisfied all of these requirements: its submitted summary judgment evidence shows that the debt exists, that the debt is secured by a lien created under Texas law, that Plaintiff is in default, that Plaintiff was provided with appropriate notice of default and acceleration, and that Intervenor is the proper party to foreclose.

### *a.  Existence of the debt and the amount.*

Intervenor has demonstrated that a debt exists.  No one disputes that Plaintiff and Songer signed the Note, agreeing to make monthly principal and interest payments on the Property.  (Doc. No. 57, pp. 19-20 (Harvey Exhibit A-1).)  The original note required Plaintiff and Songer to pay $87,400, plus interest at a yearly rate of 8.625 percent.  *Id.* at 19.

Intervenor has also demonstrated that a debt exists with regard to the loan modification.  Its submitted summary judgment evidence reflects that Plaintiff signed a modification agreement

which declared the loan amount to be $108,812.05, "consisting of the unpaid amount(s) loaned to [Plaintiff] by Lender plus any interest and other amounts capitalized."  (Doc. No. 57, p. 72 (Harvey Exhibit A-6).)  The Harvey Declaration and a September 2018 letter from Seterus to Plaintiff describe in detail how this amount was calculated.  Essentially, as of March 2015, Plaintiff's loan was delinquent and was due for the October 2011 payment.  Plaintiff's outstanding loan balance as of March 1, 2015 ($56,792.29), was combined with unpaid interest ($15,913.54) and his then-existing escrow deficiency ($30,326.70) and assessed fees ($5,945.18), for a total of $108,977.71.  Plaintiff's payments and a "suspense balance" were then subtracted from that balance, leaving the total of $108,812.05.  (Doc. No. 57, pp. 7, 10-11 (Harvey Declaration); *id*. at 90 (Harvey Exhibit A-8).)  Intervenor has carried its burden of showing the existence of the debt.

### b. The debt is secured.

Intervenor's summary judgment evidence demonstrates that the debt is secured by a lien created under Texas law.  Plaintiff and Songer signed the purchase money Note and the Deed of Trust (Doc. No. 57, pp. 19-20 (Harvey Exhibit A-1), 26-35 (Harvey Exhibit A-2)), creating a lien enforceable under Texas law.  *See* Tex. Bus. & Com. Code § 24.002(8) (a "lien" is a "charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement…").  That Deed of Trust was filed in the official real property records of Harris County.  *See* Doc. No. 57, pp. 26-35 (Harvey Exhibit A-2).  Plaintiff does not appear to contest that the debt is secured.

### c. Plaintiff is in default.

Intervenor has demonstrated that Plaintiff is in default of his obligations under the Note. The Note provides that Plaintiff would be in default if he failed to make any monthly payment as

required.  (Doc. No. 57, p. 19 ¶ 6(B).)  The Harvey Declaration states that the Note is due for the November 1, 2017 payment.  (Doc. No. 57, p. 12 (Harvey Declaration); *see also id*. at 108 (Harvey Declaration A-10, an October 2023 "payoff" statement from Selene Finance to Plaintiff), 115-29 (Harvey Exhibit A-11, an August 2018 Rushmore customer account activity statement), 131-57 (Harvey Exhibit A-12, a January 2023 Rushmore customer account activity statement), 159-74 (Harvey Exhibit A-13, a January 2023 Selene customer account activity statement); 176-81 (Harvey Exhibit A-14, an October 2023 Selene customer account activity statement).)  Plaintiff does not appear to dispute that the loan is in default.

### d. *Notice of intent to accelerate and of acceleration.*

Intervenor's summary judgment evidence indicates that Plaintiff was provided with proper notice of default and notice of the acceleration of the Note.  Plaintiff was sent a notice of intent to accelerate on June 20, 2016, by certified mail.  (Doc. No. 57, pp. 193-99 (Harvey Exhibit A-16).)  Plaintiff and Songer were each sent notices of acceleration on December 11, 2019, and the Harvey Declaration asserts that these notices were sent by certified mail as well.  (Doc. No. 57, pp. 13 (Harvey Declaration), 201-02 (Harvey Exhibit A-17).)  Plaintiff does not contest that these notices were sent by certified mail, and he does not allege that he did not receive them.[14]

### e. *Proper party.*

Finally, Intervenor has demonstrated that it is the proper party to foreclose in this case.  Intervenor's summary judgment evidence shows that it is the holder of the Note and has been

---

[14]  Even if Plaintiff had contended that he did not receive the notice of acceleration that was addressed to him, Texas' foreclosure notice requirement does not require the debtor to actually receive the notice.  *See Battle v. HSBC Bank USA, Nat'l Ass'n*, No. 4:17-CV-02552, 2017 WL 6209611, at *2 (S.D. Tex. Dec. 7, 2017) (Harmon, J.) (citing *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013)).

assigned the Deed of Trust, and is thus the beneficiary of that Deed of Trust.  *See* Doc. No. 57, pp. 37-40 (Harvey Exhibit A-3).

### f. *Plaintiff's deemed admissions.*

Separately and additionally, Plaintiff's deemed admissions also support grant of summary judgment on Intervenor's foreclosure claim.  Plaintiff is deemed to have admitted that he is in default under the Note and the Deed of Trust, that he has not made a payment on the mortgage loan in more than six years, that the loan balance as of June 1, 2015 was $108,812.05, that $52,019.76 was properly added to the loan balance upon the modification, that Intervenor is entitled to foreclose, that he does not have any defenses to foreclosure under the Deed of Trust, and that Intervenor properly sent all required notices.  *See* Doc. No. 57, pp. 243-46, Requests for Admission 1-3, 9, 11, 17-20, 26-27, 29.

### g. *Plaintiff fails to raise a genuine issue of material fact.*

Intervenor has presented a motion for summary judgment that is properly supported by evidence, so the burden now shifts to Plaintiff to show with significant probative evidence that there exists a genuine issue of material fact.  *See Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).  Plaintiff makes several contentions in his summary judgment response that a question of fact exists as to whether the modification was effectuated and properly executed. (Doc. No. 61, pp. 9-10.)  He claims that the terms of the loan modification are different from what Seterus had led him to believe.  *Id*. at 9.  He further contends that the parties were to have signed off on the modification by June 1, 2015, but that Plaintiff did not sign until August 8 and that Seterus did not sign until March 23, 2016.  *Id*. at 9-10.  And he contends that the amount of the loan modification was calculated incorrectly.  *Id*. at 9.  None of Plaintiff's arguments suffice to show a genuine issue of material fact.

36 / 70

### i.  *Modification agreement differed from Seterus' prior representations?*

Plaintiff's contention that the modification's terms differ from Seterus' prior representations lacks merit.  Plaintiff alleges, without citation to any evidence, that Seterus led him to believe that the modification "would be a balloon note consisting of the arrearages that would be due at the conclusion of the original note, at 4% interest payable monthly."  (Doc. No. 61, p. 9.)  But the modification spells out its terms specifically, and they are starkly different from what Plaintiff contends: monthly payments of principal and interest of $808.06 and continuing until principal and interest are paid in full, with a maturity date of May 1, 2055.  (Doc. No. 57, p. 72 (Harvey Exhibit A-6).)  In Texas, when parties have a valid, integrated written agreement, the parol evidence rule precludes enforcement of prior or contemporaneous agreements.  *See Central Mutual Ins. Co. v. Davis*, 576 F. Supp. 3d 493, 501 (S.D. Tex. Dec. 17, 2021) (Tipton, J.) (citing *First Bank v. Brumitt*, 519 S.W.3d 95, 109 (Tex. 2017)).  Although the parol evidence rule does not apply to subsequent agreements made after the written agreement, or to subsequent oral modifications, *see id.*, Plaintiff does not contend that a subsequent agreement exists here.  Rather, he argues in resistance to summary judgment that the written agreement did not actually reflect the true agreement of the parties.  Texas law, however, specifically forecloses Plaintiff's contention.  *See* Tex. Bus. & Com. Code § 26.02(d) (loan agreement exceeding $50,000 in value "may not be varied by any oral agreements or discussions that occur before or contemporaneously with the execution of the agreement").

Additionally, when construing a contract, courts must ascertain and give effect to the parties' intentions as expressed in the writing itself.  *NexPoint Advisors, L.P. v. Highland Cap. Mgmt., L.P.*, No. 3:22-CV-2170-S, 2024 WL 847017, at *3 (N.D. Tex. Feb. 28, 2024) (citing *El*

*Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012)).  Surrounding facts and circumstances "can inform the meaning of language but cannot be used to augment, alter, or contradict the terms of an unambiguous contract."  *Motis Energy, LLC v. SWN Prod. Co., LLC*, No. 4:17-cv-00982, 2017 WL 8732889, at *5 (S.D. Tex. Oct. 17, 2018) (Atlas, J.) (quoting *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 758 (Tex. 2018) (cleaned up)).  This is why the parol evidence rule exists: to prevent parties to integrated written agreements from subsequently presenting extrinsic evidence to create ambiguity or to yield a different meaning from what the written agreement's language imports.  *See URI,* 543 S.W.3d at 764.[15]  As applied here, Plaintiff's modification agreement cannot be varied by any previous or inconsistent agreement.  *Cf. Rippy v. Deutsche Bank Nat'l Tr. Co.*, Civ. No. SA-13-CA-730-OLG, 2014 WL 12489685, at *14 (W.D. Tex. Aug. 11, 2014), *adopted*, 2014 WL 12489605 (W.D. Tex. Aug. 29, 2014) ("To the extent that plaintiffs allege that defendant made [] oral misrepresentations regarding the loan modification, any evidence of those misrepresentations would be barred by the parol evidence rule ….").

### ii.  Modification signed contrary to terms of modification offer?

In a single sentence, Plaintiff next attempts to posit a genuine issue of material fact by claiming that the modification was signed contrary to the terms of the modification offer.  (Doc. No. 61, p. 9.)  This argument is not sufficiently briefed and is therefore waived.  *See Vindustrialist, LLC v. Wilmington Sav. Fund Soc'y*, No. 4:23-cv-02827, 2024 WL 666118, at *5 (S.D. Tex. Jan. 29, 2024) (Palermo, M.J.), *adopted*, 2024 WL 665195 (S.D. Tex. Feb. 16, 2024); *Ellis v. Carrington Mortg. Servs., LLC*, No. 4:19-CV-4370, 2021 WL 3603604, at *4 (S.D. Tex.

---

[15]  Contracts in Texas are presumed to integrate fully all prior and contemporaneous agreements.  *See N.K. Parrish Inc. v. Sw. Beef Indus. Corp.*, 638 F.2d 1366, 1368-69 (5th Cir. 1981).

Aug. 13, 2021) (Hanen, J.).  To the extent Plaintiff may be claiming that the modification offer had already expired by the time it was finalized, *see* Doc. No. 61, p. 9 ¶ 26, that argument lacks merit.  Plaintiff's own summary judgment evidence indicates that Seterus reserved the right to withdraw its offer of a modification if Plaintiff did not accept by June 1, 2015 – not that the offer was automatically withdrawn or otherwise was no longer effective.  *See* Doc. No. 61-3, p. 1 (letter states that if signed documents not returned by June 1, 2015, Seterus "may revoke [its] offer").

### iii. *Debt amount inaccurate?*

Plaintiff also attempts to posit an issue of material fact by claiming that the amount of the debt is inaccurate.  *See* Doc. No. 61, pp. 9-10.  He argues that "there are three [] different amounts, and it is a question of fact as to which is the correct one."  *Id*. at 10.  Plaintiff's contention is that Fannie Mae told him in its September 26, 2019 letter (Doc. No. 61-7) that the unpaid balance was $55,694.14 as of March 31, 2016.  But the undersigned has already determined that the September 26 letter is inadmissible hearsay, and is not considering that letter.  Plaintiff also contends that he contested the amount of the unpaid balance at the time of the modification "and would show Fannie Mae that the unpaid balance should be $84,349.12." (Doc. No. 61, p. 9.)  That contention, however, is unsupported by any summary judgment evidence submitted by Plaintiff – nowhere in Plaintiff's submitted summary judgment evidence is there any indication that the amount of the unpaid balance was actually $84,349.12.[16]  Plaintiff fails to raise a genuine issue of material fact with regard to the amount of the debt.

---

[16]  In any event, Plaintiff is already deemed to have admitted that the amount of the debt was $108,812.05 as of June 1, 2015, not $84,349.12.  *See* Doc. No. 57, p. 244.

### iv.  Chain of ownership?

Though his argument is difficult to follow, Plaintiff appears to take issue with the chain of ownership of the Note and the Deed of Trust.  *See* Doc. No. 61, pp. 5-8.  But as Intervenor demonstrates, and as discussed next, the chain is intact and valid.

### A.  Note.

Intervenor is the holder of the Note.  Plaintiff and Songer first executed the Note in June 1992, promising to pay Home Trust Company.  (Doc. No. 57, pp. 19-20 (Harvey Declaration A-1).)  The Note provides that Home Trust was permitted to transfer the Note, and that anyone who took the Note by transfer and who was entitled to receive payments under the Note would be considered the Note Holder.  *Id*. at 19.  Home Trust transferred the Note to Metmor Financial, Inc.  *Id*. at 20.  Metmor then transferred the Note to Chemical Mortgage.  *Id*.  All of these transfers are noted on the face of the Note itself.

By an allonge which included Plaintiff's loan number and the Property address, Chemical Mortgage's successor, JPMorgan Chase Bank, National Association, then transferred the Note to Fannie Mae.  (Doc. No. 57, p. 21.)  Fannie Mae then transferred the Note by an allonge bearing the loan number to Wilmington Savings Fund Society.  *Id*. at 22.  Wilmington Savings Fund Society then endorsed the Note in blank, by an allonge bearing the loan number and the Property address.  *Id*. at 23.  For reasons unknown, Wilmington Savings Fund Society issued a second endorsement of the Note in blank, by an allonge that again bore the loan number and the Property address.  *Id*. at 24.  Endorsements in blank make a note payable to its bearer.  *See* Tex. Bus. & Com. Code § 3.205(b) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed.")  The uncontroverted evidence indicates that Intervenor currently possesses the endorsed-in-blank Note

(*see* Doc. No. 57, p. 7 (Harvey Declaration) ("Intervenor is the owner and holder of the Note.")),

and therefore owns it and is entitled to demand payment on it.  *See Martinez v. Wells Fargo*

*Bank, N.A.*, No. 7:20-CV-104, 2021 WL 2764857, at *3 & n.8 (S.D. Tex. Apr. 15, 2021) (Crane,

J.) (citing *Kiggundu v. Mortg. Elec. Registration Sys., Inc.*, 469 F. App'x 330, 331 (5th Cir.

2012); Tex. Bus. & Com. Code § 1.201(b)(21) (defining "Holder")).

### B.  Deed of Trust.

The beneficiary of the original Deed of Trust, dated June 12, 1992, was Home Trust

Company.  (Doc. No. 57, p. 26 (Harvey Declaration A-2).)  That document was recorded in the

Harris County real property records.  *Id*. at 32-35.  Home Trust assigned and transferred the

Deed of Trust to Metmor Financial on that same day, and that assignment was recorded as well.

*Id*. at 42-44 (Harvey Declaration A-4).)  Metmor assigned the Deed of Trust to Chemical

Mortgage effective June 12, 1995; that assignment was recorded.  *Id*. at 45-47.  Chemical

Mortgage's successor, JPMorgan Chase Bank, N.A., assigned the Deed of Trust to Fannie Mae

effective September 23, 2014; that assignment was recorded as well.  *Id*. at 48-52.  Fannie Mae,

in turn, assigned the Deed of Trust to Wilmington Savings Fund Society effective June 9, 2016,

and that assignment was recorded also.  *Id*. at 53-56.  On January 17, 2020, Wilmington Savings

Fund Society assigned the Deed of Trust to MTGLQ Investors, L.P., with that assignment being

recorded as well.  *Id*. at 57-60.  On that same day, MTGLQ Investors assigned the Deed of Trust

to US Bank-RMAC; that assignment was also recorded.  *Id*. at 61-64.  Finally, US Bank-RMAC

assigned the Deed of Trust to Intervenor on June 15, 2022, and that transaction was also

recorded.  *Id*. at 37-40 (Harvey Declaration A-3).  The Deed of Trust's chain of ownership

therefore passed cleanly from its origination through its assignment to Intervenor.

### C.  *Plaintiff's objections.*

Plaintiff theorizes an issue of material fact by claiming that the note was improperly assigned.  He argues that the allonge transferring the loan from Fannie Mae to Wilmington Savings Fund Society (Doc. No. 61-1) did not show the "legal description/address, nor does it show the note number, and without these, is invalid."  (Doc. No. 61, p. 11.)  Plaintiff points to no authority holding that note allonges must include such information, and he offers no evidence or argument that the challenged allonge does not belong with the Note or that it was not properly affixed to the Note.

Plaintiff also argues that the endorsement of the Note from Fannie Mae to Wilmington Savings Fund Society was signed on Fannie Mae's behalf by Rushmore.  *See* Doc. No. 61-1. This, Plaintiff claims, was in violation of Fannie Mae's guidelines, which provide that a "mortgage seller may not delegate to an attorney-in-fact its authority to execute an endorsement."  (Doc. No. 61, p. 11 (quoting Doc. No. 61-10, p. 2).)  Plaintiff's argument lacks merit for two reasons.  First, he fails to explain why an endorsement signed in violation of Fannie Mae's guidelines is not valid as commercial paper so as to effect the transfer.  And in any event, review of Fannie Mae's Selling Guide indicates that this provision applies to mortgage sellers who are doing business with Fannie Mae, not to Fannie Mae itself.  *See* Fannie Mae, *Selling Guide, Fannie Mae Single Family*, p. 2 § A1-1-01 (Mar. 6, 2024)[17] ("Sellers/servicers must be approved to do business with Fannie Mae."); *see also Randolph Cnty., Ala. v. Fed. Nat'l Mortg. Ass'n*, No. 3:12-CV-886-WKW, 2013 WL 3947614, at *1 (M.D. Ala. July 31, 2013) (Fannie Mae buys home loans from approved mortgage sellers, packages them into mortgage-

---

[17]  The undersigned takes judicial notice of this guide.  *See Robbins*, 2017 WL 6513662, at *4.  The guide is available at https://singlefamily.fanniemae.com/media/38401/display (last visited Apr. 10, 2024).

backed securities, and then sells those securities). Plaintiff therefore fails to raise a genuine issue of material fact with regard to the endorsement of the Note or its chain of ownership.

Plaintiff further protests that a fact question exists as to the Deed of Trust's chain of ownership because Chemical Mortgage attempted to assign the Deed of Trust to Fannie Mae on October 1, 1994. At that time, Plaintiff points out, Chemical Mortgage had not yet been assigned the Deed of Trust – Metmor's assignment to Chemical Mortgage did not take place until the following June. (Doc. No. 61, pp. 6-7.) And indeed, Intervenor's complaint does include an allegation and an exhibit indicating a purported assignment of the Deed of Trust by Chemical Mortgage to Fannie Mae in October 1994. (Doc. No. 18, p. 4; Doc. No. 18-4, p. 6.) To the extent Chemical Mortgage may have lacked the authority to assign the Deed of Trust in October 1994, any such purported assignment was of no effect because Chemical Mortgage could not assign what it did not yet own. But that purported assignment was apparently never recorded, and any misstep was cured by Metmor's subsequent valid assignment of the Deed of Trust to Chemical Mortgage, followed by the eventual assignment of the Deed of Trust to Fannie Mae by Chemical Mortgage's successor. Plaintiff's objection in this regard is meritless.

Plaintiff additionally attempts to argue that Intervenor is not the proper holder of the Note because an allonge filed as part of Intervenor's complaint (Doc. No. 18-1, p. 5) is not a matching copy of an allonge filed by Rushmore in Plaintiff's 2018 bankruptcy case (Doc. No. 61-1). Plaintiff argues that the challenged allonge filed by Intervenor with its complaint "has been altered by the addition of a note number." (Doc. No. 61, p. 11.) The summary judgment evidence submitted by Intervenor, however, straightforwardly consists of the original Note with its immediate endorsement to Metmor and its subsequent endorsement to Chemical Mortgage (Doc. No. 57, p. 19-20), the endorsement from JP Morgan Chase Bank (Chemical Mortgage's

successor) to Fannie Mae (*id*. at 21), Fannie Mae's endorsement to Wilmington Savings Fund Society (*id*. at 22), and then Wilmington Savings Fund Society's two endorsements of the Note in blank (*id*. at 23-24).  Wilmington Savings Fund Society's endorsement of the Note in blank and Intervenor's current possession of the Note is therefore all that is required.  Plaintiff characterizes the two endorsements as improper because they are signed by two different servicers, but fails to explain how the endorsements, both of which are in blank, are thus rendered invalid.

### *v. Irregular billing statements and failure to incorporate modification.*

Plaintiff argues that Seterus provided irregular billing statements.  (Doc. No. 61, p. 12.) He fails to explain why past irregular billing statements create any genuine fact issue for summary judgment, in light of the current accounting for the amount due under the Note, so his argument cannot defeat summary judgment.  This inadequately briefed argument is waived.  *See Ellis*, 2021 WL 3603604, at *4.

Plaintiff also argues that Seterus also failed to incorporate the modification's terms into subsequent billing statements.  (Doc. No. 61, p. 10; *see also* Doc. No. 61-4 (Seterus billing statements).)  Plaintiff's argument lacks merit: both Plaintiff and Intervenor contend that the loan modification was implemented on March 24, 2016; the Seterus billing statements submitted by Plaintiff are dated March 15 and March 16 – prior to the implementation of the modification. *See* Doc. No. 61-4, pp. 1-2.  Additionally, Intervenor's summary judgment evidence shows that Plaintiff made very few payments, in any amount, even after the modification was implemented. *See* Doc. No. 57, pp. 115-29 (Harvey exhibit A-11) (reflecting sporadic payments from April 2017 to July 2018); *Id*. at 131-57 (Harvey exhibit A-12) (reflecting sporadic payments from

October 2018 to April 2019, in September and December 2019, and then nothing thereafter).[18]

Plaintiff fails to demonstrate how any Seterus billing irregularities bear on Plaintiff's

delinquency on his mortgage loan, because Plaintiff was not making payments anyway.

### vi. *Consumer Financial Protection Bureau consent order.*

Plaintiff argues that Seterus was punished by the Consumer Financial Protection Bureau

through a consent order encompassing conduct that allegedly included Plaintiff's loan. (Doc.

No. 61, p. 12.)  Even if this were true, Plaintiff fails to explain how that consent order or Seterus'

conduct affected Plaintiff's defaulted mortgage loan or defeats summary judgment.  Because this

argument is not sufficiently briefed, it is waived. *See Ellis*, 2021 WL 3603604, at *4.

### vii. *Plaintiff's deemed admissions.*

Separately and additionally, Plaintiff's deemed admissions foreclose his advanced

defenses to summary judgment on the foreclosure claim. *See Carney*, 258 F.3d at 420.  Plaintiff

is deemed to have admitted that he has no defenses to foreclosure on the Property under the Deed

of Trust. *See* Doc. No. 57, p. 256, Requests for Admission 19-20.

### 2. *Intervenor has shown that Plaintiff has breached his contract.  Plaintiff fails to raise a genuine issue of material fact.*

Intervenor has also provided sufficient evidence to show that it is entitled to summary

judgment on its breach of contract claim.  A breach of contract claim under Texas law is

established with demonstration of the formation of a valid contract, performance by the suing

party under that contract, breach of the contract by the sued party, and damages sustained as a

result of the breach. *See Lewis v. Citadel Servicing Corp.*, No. 4:21-cv-01294, 2023 WL

---

[18]  Plaintiff contends that Seterus misapplied payments, *see* Doc. No. 61, p. 11, but he does not contest the accuracy of the payment histories submitted by Intervenor, and he does not claim (let alone produce evidence) that he made or attempted to make any specific payments that are not reflected in those histories.

7926809, at *3 (S.D. Tex. Nov. 16, 2023) (Edison, M.J.) (citing *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018)).

Here, Intervenor's evidence indicates that summary judgment is appropriate. First, Intervenor's summary judgment evidence indicates that a valid contract existed: it has presented evidence that the Note exists and that it is the holder of that Note. *See* Doc. No. 57, pp. 7 (Harvey declaration), 19-24 (Harvey Exhibit A-1).) Intervenor has also shown that it has performed (and that its predecessors in interest performed) its obligations under the contract by extending the mortgage loan to Plaintiff. *See id*. And Intervenor has shown that it has suffered damage, by virtue of Plaintiff's failure to make his required payments. *See id*. at 79-88 (Harvey Exhibit A-7), 108-11 (Harvey Exhibit A-10), 115-29 (Harvey Exhibit A-11), 131-57 (Harvey Exhibit A-12), 159-74 (Harvey Exhibit A-13).

In resistance to summary judgment, Plaintiff offers no argument or evidence that he has not breached the contract – that is, that he has paid the amounts required. Indeed, under the terms of the Note, any nonpayment would render Plaintiff in default. (Doc. No. 57, p. 19 ¶ 6(B).) Intervenor's summary judgment evidence indicates that Plaintiff's mortgage was delinquent and due for the November 1, 2017 payment. (Doc. No. 57, p. 108 (Harvey Exhibit A-10).) Nor does Plaintiff present evidence that he was not required to perform under the contract. As discussed in the sections above, the Note and the Deed of Trust were valid, and Plaintiff agreed to the terms of the modification loan. Summary judgment is therefore appropriate,

because Plaintiff has failed to raise any genuine issue of fact material to the determination of whether he breached his contract to pay on the Note.[19,20]

Separately and additionally, Plaintiff's deemed admissions further support grant of summary judgment on Intervenor's breach of contract claim.  Plaintiff is deemed to have admitted that he is in default under the mortgage loan for failing to make monthly payments as required (Doc. No. 57, pp. 244-45, Requests for Admission 10, 22) and that Intervenor performed all of its obligations under the Note and Deed of Trust.  *Id.* at 245-46, Requests for Admission 23-25.

### 3. IRS tax lien.

Intervenor additionally seeks summary judgment on its claim that its interest in the Property is superior to the IRS' tax lien.  Intervenor has provided sufficient summary judgment

---

[19]  Intervenor additionally contends that Plaintiff's claims regarding the loan modification are barred by the doctrine of quasi-estoppel, because Plaintiff acquiesced to the loan modification and availed himself of its terms.  (Doc. No. 56, pp. 26-27.)  In Texas, quasi-estoppel "precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken." *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 337 (Tex. 2020), quoted in *MTGLQ Invs., L.P. v. Alexander*, No. 20-20528, 2021 WL 3921418, at *3 (5th Cir. Sept. 1, 2021) (unpublished) (*per curiam*).  The doctrine applies when it would be "unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 778 (Tex. 2017). Here, because Intervenor has already amply demonstrated its entitlement to summary judgment on other grounds, it is unnecessary to determine whether it would be unconscionable to allow Plaintiff to make his claims regarding the loan modification.

[20]  To the extent Plaintiff can be understood to argue that the terms of the loan modification agreement were unconscionable (*see* Doc. No. 1-1, pp. 9-10; Doc. No. 61, pp. 9-10; Doc. No. 61-6, p. 2), that argument too fails to defeat summary judgment.  Texas law recognizes both substantive and procedural unconscionability.  *See Proske v. Barrett Daffin Frappier Truner & Engel, LLP*, Civ. No. H-19-831, 2019 WL 5787739, at *3 (S.D. Tex. Nov. 6, 2019) (Rosenthal, C.J.) (citing *Mattar v. BBVA Compass Bank, N.A.*, No. 13-16-496-cv, 2018 WL 2440382, at *5 (Tex. App. – Corpus Christi-Edinburg 2018, no pet.)).  "Substantive unconscionability refers to the fairness of the agreement itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the agreement." *Id.*  But the party raising an unconscionability defense must plead and prove both procedural and substantive unconscionability.  *Id.* (citing *Belanger v. BAC Home Loans Servicing, L.P.*, 839 F. Supp. 2d 873, 880 (W.D. Tex. 2011)).  Here, Plaintiff does not allege or show how the modification loan was unfair because of how it was adopted or that the loan itself was unfair (as opposed to merely reflecting an inaccurate amount owed).

evidence to demonstrate this, and the undersigned recommends that summary judgment be granted.

Section 6321 of Title 26, United States Code, provides that the amount of any tax that a person neglects or refuses to pay, after demand, shall be a lien in favor of the United States upon all property and rights to property, real or personal, belonging to that person. *See* 26 U.S.C. § 6321; *United States v. National Bank of Commerce*, 472 U.S. 713, 719 (1985). Such a lien arises at the time the tax assessment is made and continues until the liability for the assessed amount is satisfied or becomes unenforceable by lapse of time. 26 U.S.C. § 6322. The United States perfects such a lien by filing a "Notice of Federal Tax Lien." *See United States v. Anthony*, No. 6:19-CV-00354-JCB-JDL, 2021 WL 2690517, at *8 (E.D. Tex. Apr. 30, 2021), *adopted*, 2021 WL 2689834 (E.D. Tex. June 30, 2021). The tax lien, however, "shall not be valid against any purchaser" until it is recorded in the appropriate office in the location where the property subject to the lien is situated. 26 U.S.C. § 6323(a); 26 U.S.C. § 6323(f)(1)(A)(i).

In this case, the United States perfected its interest by filing a Notice of Federal Tax Lien, which was recorded with the Harris County Clerk on October 2, 2018. (Doc. No. 57, pp. 204-06.) That tax lien, however, was recorded after the previously perfected Deed of Trust, which was recorded in June 1992. *Id.* at 26-35. Under the provisions of § 6323(a), the lien created by Deed of Trust (and the underlying Note) is superior to the tax lien. *See also United States v. New Britain*, 347 U.S. 81, 85 (1954); *Read v. United States ex rel. Dep't of Treasury*, 169 F.3d 243, 252 (5th Cir. 1999). The tax lien will be discharged, then, because the United States has been named as a party in this case. *See* 28 U.S.C. §§ 2410(a), (c).

The United States does not oppose Intervenor's motion for summary judgment and acknowledges that its tax lien is inferior to the lien created by the Deed of Trust. (Doc. No. 59.)

The United States requests that the Court order the payment to the United States of any excess proceeds from the sale of the Property upon foreclosure.  *See* Doc. No. 59-1.  Intervenor does not appear to oppose this request.  Plaintiff, for his part, has taken no position with respect to the tax lien – he makes no mention of the issue in his response to the summary judgment motion.  *See* Doc. No. 61.

Having considered the summary judgment evidence, the undersigned concludes that Intervenor's interest in the Property, secured through the perfected Deed of Trust, is superior to the United States' tax lien.  The undersigned recommends grant of summary judgment for Intervenor on this point, and the issuance of an order directing the payment of any excess proceeds to the United States after the Property is sold and Intervenor's lien is satisfied.

### 4. Claim for attorney fees.

Intervenor seeks summary judgment on its claim for attorney fees.  Summary judgment for Intervenor is appropriate.

The Note provides:

> If the Note Holder has required me [the borrower] to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

(Doc. No. 57, p. 19 ¶ 6(E).)  The Deed of Trust provides that, in the event of default, the lender may accelerate the balance due under the Note and invoke the power of sale and other remedies allowed by law.  The Deed of Trust continues: "Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence."  (Doc. No. 57, p. 29 ¶ 21.)  As part of its

foreclosure claim, Intervenor now claims for attorney fees to enforce the power of sale on the Property.  (Doc. No. 56, pp. 21-23.)

Because the Court's jurisdiction arises in diversity, Texas law applies.  *See Rosenberg*, 767 F.2d at 199; *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  Texas law allows attorney fees to be recovered pursuant to mortgage contracts.  *See Wilmington Savings Fund Society, FSB v. Barr*, No. 3:22-CV-735-S-BN, 2023 WL 9231462, at *8 (N.D. Tex. Nov. 16, 2023), *adopted*, 2024 WL 150293 (N.D. Tex. Jan. 11, 2024) (citing *Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1040 (5th Cir. 2014)).  In this case, the relevant documents allow for recovery of attorney fees associated with enforcing the Note and Deed of Trust upon Plaintiff's default, so Intervenor is entitled to its reasonable attorney fees for pursuing its foreclosure claim under the Note and Deed of Trust.  The district court should order Intervenor to file a separate application for attorney fees that establishes the amount of the reasonable and necessary attorney fees and costs it has incurred, with supporting evidence, based on an acceptable method for calculating attorney fees under § 38.001(b)(8) of the Texas Civil Practice and Remedies Code and under the Note and Deed of Trust.  *Cf. Barr*, 2023 WL 9231462, at *8.

### 5.  *Dismissal of Plaintiff's claims.*

Intervenor seeks summary judgment on Plaintiff's claims in this lawsuit, requesting dismissal of those claims.  (Doc. No. 56, pp. 23-30.)  The district court should grant summary judgment for Intervenor.

To recap, Plaintiff in this case seeks an injunction requiring the defendants to stop all foreclosure proceedings, contending that the defendants deprived Plaintiff of his contractual rights under the Deed of Trust and § 51.002 of the Texas Property Code, that the defendants misrepresented proper amounts due under the Note, and that the defendants pressured Plaintiff to

sign the loan modification under duress.  (Doc. No. 1-1, p. 14 (state court petition).)  Plaintiff

also seeks a declaratory judgment stating, in essence:

- the defendants wrongfully added $52,019.76 to the mortgage loan without substantiation;

- the defendants failed to accurately account for payments made by Plaintiff and incorrectly reversed payments made by Plaintiff;

- the defendants misrepresented the outstanding balance presented through the loan modification agreement;

- the defendants wrongfully accelerated the balance due under the Note and Deed of Trust;

- the defendants failed to give Plaintiff proper notices, including properly calculated payoff amounts; and

- the defendants wrongfully posted the Property for foreclosure.

*See id*. at 10-11.  Intervenor is entitled to summary judgment on all of Plaintiff's claims on the

merits, but first argues that Plaintiff's claims are untimely.  The undersigned addresses the

limitations question first.

### a. *Limitations.*

Intervenor argues that Plaintiff's claims regarding the loan modification are barred by

limitations.  (Doc. No. 56, p. 26.)  Intervenor is correct.

The loan modification bears a date of May 20, 2015, and states that it reflects amounts

due and payable on the mortgage loan as of June 1, 2015.  (Doc. No. 57, p. 72 (Harvey exhibit

A-6).)  Plaintiff's signature on the modification agreement is dated August 8, 2015.  *Id.* at 73.

The Seterus representative's signature on the modification agreement is dated March 23, 2016.

*Id.*  Intervenor contends that Plaintiff's limitations period began to run on March 24, 2016, the

date on which the modification was implemented.  (Doc. No. 56, p. 26.)  Plaintiff accepts this

assumption, and states that the limitations period would have expired on March 24, 2020, four years after the date the modification was implemented.  (Doc. No. 61, p. 8.)[21]

Plaintiff, meanwhile, has been the debtor in four Chapter 13 bankruptcy cases in this district since the signing of the modification agreement – all of those cases were subsequently dismissed.  The undersigned takes judicial notice of the dates on which these cases were filed and dismissed, with the respective document numbers on the docket of each case:

- *In re McMahan*, No. 16-35636 (Bankr. S.D. Tex.), filed on November 8, 2016 (Doc. No. 1), dismissed on February 9, 2018 (Doc. No. 119);

- *In re McMahan*, No. 18-33680 (Bankr. S.D. Tex.), filed on July 2, 2018 (Doc. No. 1), dismissed on April 2, 2019 (Doc. No. 68);

- *In re McMahan*, No. 19-34984 (Bankr. S.D. Tex.), filed on September 2, 2019 (Doc. No. 1), dismissed on December 3, 2019 (Doc. No. 25).

- *In re McMahan*, No. 21-33904 (Bankr. S.D. Tex.), filed on December 6, 2021 (Doc. No. 1), dismissed on March 1, 2022 (Doc. No. 28).

---

[21]  This assumes that the applicable limitations period actually was four years and not some other period.  No party argues that a limitations period longer than four years applies in this case.  Indeed, an action for recovery of real property under a real property lien, for the foreclosure of a real property lien, or for wrongful foreclosure must be brought within four years.  *See* Tex. Civ. Prac. & Rem. Code § 16.035(a); *see Carter v. PennyMac Loan Servs., Inc.*, Civ. No. H-21-3216, 2022 WL 1785490, at *1 (S.D. Tex. June 1, 2022) (Hughes, J.).  To the extent Plaintiff could be understood as bringing a claim for fraud or breach of fiduciary duty, that limitations period is also four years.  *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(5).  To the extent Plaintiff could be understood as bringing a claim for conversion of personal property, that limitations period is two years.  *See* Tex. Civ. Prac. & Rem. Code § 16.003(a).  To the extent Plaintiff could be understood as bringing a claim for negligent misrepresentation, that limitations period is two years from the date of the misrepresentation.  *See McGowan v. Ditech Fin., LLC*, No. 3:15-CV-3155, 2018 WL 4346722, at *4 (N.D. Tex. Aug. 24, 2018), *adopted*, 2018 WL 4335870 (N.D. Tex. Sept. 11, 2018) (citing *Kansa Reinsurance Co. v. Cong. Mortg. Corp. of Texas*, 20 F.3d 1362, 1371 (5th Cir. 1994); *Anderson v. Am. Tank & Vessel Inc.*, Civ. No. H-05-3652, 2007 954228, at *5 (S.D. Tex. Mar. 26, 2007) (Harmon, J.)).  A claim for economic duress must also be brought within two years; this time period has been measured from the date the duress ceased – as applied here, at the time the loan modification was signed.  *See Castillo v. First City Bancorporation of Texas, Inc.*, 43 F.3d 953, 962-63 (5th Cir. 1994); *Middaugh v. InterBank*, 528 F. Supp. 3d 509, 543 (W.D. Tex. 2021) (duress claim regarding transaction accrued when transaction was completed).

Plaintiff asserts that the limitations clock stopped during the pendency of each of his bankruptcy cases.  Outlining each of his bankruptcy cases and the periods during which they were pending,[22] he states: "the statute of limitations paused on November 8, 2016, after running for almost 8 months, and thereafter paused each time Plaintiff was in bankruptcy.  Because Plaintiff initiated this action during the last bankruptcy, when the statute of limitations remained paused, his claims cannot fail due to statute of limitations."  (Doc. No. 61, p. 9.)  Thus, under Plaintiff's reasoning, the limitations clock stopped from November 8, 2016 to February 9, 2018, from July 2, 2018 to April 2, 2019, from September 2, 2019 to December 3, 2019, and from December 6, 2021 to March 1, 2022.

A provision of the Bankruptcy Code does provide for tolling of unexpired statutes of limitation for debtors, but not in the way that Plaintiff contends:

> If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of the end of such period, including any suspension of such period occurring on or after the commencement of the case or two years after the order for relief.

11 U.S.C. § 108(a) (cleaned up).  An "order for relief" in this context occurs upon the commencement of a voluntary bankruptcy case, including the debtor's filing of a bankruptcy petition.  *See* 11 U.S.C. §§ 301(a), (b).  Thus, Plaintiff would have been required to bring this lawsuit before the limitations period expired or within two years after his bankruptcy filing, whichever was later.  *See In re Uplift RX, LLC*, No. 17-32186, 2023 WL 5355353, at *10-11 (Bankr. S.D. Tex. Aug. 21, 2023) (Isgur, J.) (§ 108(a) "sets the deadline to file a complaint to the later of two years after the petition date or whenever the period would run under the applicable

---

[22] Some of Plaintiff's asserted bankruptcy case dismissal dates are incorrect, but not meaningfully so.  The correct dates on which Plaintiff's bankruptcy cases were commenced and dismissed is set out above in the main text.

limitations period under state law – whichever is longer.") "The two-year extension past the petition date only applies for claims which 'have not expired before the date of the filing of the petition.'" *Id.* (quoting 11 U.S.C. § 108(a)).

The limitations clock was thus not "tolled" during the pendency of Plaintiff's bankruptcy cases – contrary to Plaintiff's reasoning, the clock did not simply stop whenever Plaintiff filed a bankruptcy petition and then resume when each of those bankruptcy cases was dismissed. Rather, § 108(a) set the limitations clock in one of two ways upon the filing of each of Plaintiff's bankruptcy cases. If the original limitations period was set to expire less than two years after the date of Plaintiff's filing of a bankruptcy petition, then Plaintiff would have until two years after the petition filing date to bring this lawsuit. If the original limitations period was set to expire more than two years after the filing of Plaintiff's bankruptcy petition, then Plaintiff would have until the expiration of the original limitations period to bring this lawsuit. And if the limitations period had already expired at the time Plaintiff filed a bankruptcy petition, § 108(a) would have no effect – a subsequent bankruptcy filing does not resuscitate an action that is already limitations-barred.[23]

As applied here, all of Plaintiff's claims are barred by limitations. As Plaintiff notes (Doc. No. 61, p. 9), if a four-year limitations clock began to run when the modification was implemented, then this suit was required to be filed by March 24, 2020. The following events then occurred:

---

[23] This analysis gives Plaintiff the benefit of an assumption that § 108(a) grants Plaintiff any limitations clock reset at all. Courts are divided on this question – some hold that § 108(a), by its terms, grants an extension of time for commencement of an action only to the bankruptcy trustee, while others more liberally construe the Bankruptcy Code as affording this additional time to debtors-in-possession (like Plaintiff here). *Compare Yates v. Sonoma Cnty.*, No. 23-cv-01812-HSG, 2024 WL 1261200, at *6 (N.D. Cal. Mar. 25, 2024) (§ 108(a) grants additional time only to trustees) *with In re Stephens*, No. 21-42857, 2024 WL 74897, at *6 (Bankr. E.D.N.Y. Jan. 5, 2024) (§ 108(a) extended debtor's time to bring cause of action). Plaintiff's lawsuit was late under either analysis, so the undersigned need not address the question further here.

- Plaintiff filed a bankruptcy petition on November 8, 2016.  *In re McMahan*, No. 16-35636 (Bankr. S.D. Tex.).  Because the limitations period extended more than two years beyond the date of this bankruptcy petition, the limitations deadline remained unchanged: March 24, 2020.

- Plaintiff filed another bankruptcy petition on July 2, 2018.  *In re McMahan*, No. 18-33680 (Bankr. S.D. Tex.).  Because the limitations period extended less than two years beyond the date of this bankruptcy petition, § 108(a) operated to extend Plaintiff's deadline for filing this lawsuit to July 2, 2020.

- Plaintiff filed another bankruptcy petition on September 2, 2019.  *In re McMahan*, No. 19-34984 (Bankr. S.D. Tex.).  Because the limitations period extended less than two years beyond the date of this bankruptcy petition, § 108(a) operated to extend Plaintiff's deadline for filing this lawsuit to September 2, 2021.

- Plaintiff filed another bankruptcy petition on December 6, 2021.  *In re McMahan*, No. 21-33904 (Bankr. S.D. Tex.).  Because the limitations period had already expired by this time, on September 2, 2021, § 108(a) had no effect.

- Plaintiff filed this lawsuit in Texas state court on or about May 2, 2022.  *See* Doc. No. 1-1, p. 6.  Because the limitations period had expired on September 2, 2021, Plaintiff's lawsuit was barred by limitations.

Because Plaintiff's claims regarding the loan modification are barred by limitations, Intervenor is entitled to summary judgment on those claims on that basis alone.  Some of Plaintiff's claims, however, relate to the defendants' foreclosure attempt itself.  The undersigned next evaluates those claims.

55 / 70

### b. Wrongful acceleration; wrongful posting for foreclosure; deprivation of contractual rights under Deed of Trust.

Plaintiff asserted in his state court petition that the foreclosure should be halted because the defendants wrongfully accelerated Plaintiff's mortgage loan – they allegedly failed to provide a proper notice of default or acceleration and failed to provide Plaintiff with an opportunity to cure his default. (Doc. No. 1-1, pp. 11-13 (state petition).) He also asserted that the defendants wrongfully posted the Property for foreclosure because their notice of foreclosure sale allegedly failed to set forth an amount due or a payoff amount. *Id.* at 13. And he alleged that he was not provided his contractual rights under the Deed of Trust. *See id.* at 14. These claims appear to be intertwined with one another, so the undersigned addresses them together here.

The notice of acceleration was sent to Plaintiff on December 11, 2019. (Doc. No. 57, p. 201.) Plaintiff filed this lawsuit less than four years later (in May 2022), so these claims are not barred by limitations. Nevertheless, they are meritless, and summary judgment is appropriate.

Plaintiff first claims that the acceleration was wrongful because no notices of default or acceleration were provided. (Doc. No. 1-1, p. 11.) The summary judgment evidence flatly refutes Plaintiff's claim, and Plaintiff provides no evidence to the contrary. On June 20, 2016, Rushmore sent Plaintiff and Songer a "Notice of Intent to Accelerate" by certified mail. (Doc. No. 57, p. 194-99 (Harvey exhibit A-16).) That notice informed Plaintiff and Songer that the mortgage loan was in default for failure to make payments due on and after November 1, 2015. *Id.* at 194. The notice stated: "The amount required to cure this delinquency as of the date of this letter is $11,345.45…." *Id.* The notice informed Plaintiff and Songer that if the delinquency were not cured by July 25, 2016, Rushmore (who was the loan servicer at that time) intended to initiate foreclosure proceedings and would "accelerate the loan balance as soon as allowable

under applicable laws and regulations.  In such case, your property will be sold at a duly held foreclosure sale or sheriff's sale and you will be required to vacate the premises." *Id*.  Plaintiff's state court petition asserts that this notice was never provided, and that the sum certain and payment deadline were not included, *see* Doc. No. 1-1, p. 12, but the summary judgment evidence demonstrates that such notice clearly was provided, and that it contained the items that Plaintiff complains were omitted.  Further, as discussed in the preceding sections, Intervenor's summary judgment evidence indicates that Plaintiff and Songer were each sent notices of acceleration on December 11, 2019, and the Harvey Declaration asserts that these notices were sent by certified mail as well.  (Doc. No. 57, pp. 13 (Harvey Declaration), 201-02 (Harvey Exhibit A-17).)  Plaintiff does not contest that these notices were sent by certified mail, and he does not allege that he did not receive them.  Plaintiff's state court contention that the notice of intent to accelerate was ambiguous (Doc. No. 1-1, p. 13) is likewise without merit, because the notice of intent to accelerate plainly states that the lender intended to accelerate the loan balance as soon as allowable under the law.  (Doc. No. 57, p. 194.)  Plaintiff's wrongful acceleration claim lacks merit, and summary judgment for Intervenor is appropriate on the merits if the district court does not dismiss based on limitations.

Likewise, Plaintiff's state court petition asserted that the notice of foreclosure sale did not "set forth an amount due or a payoff" and that the defendants violated his rights under § 51.002 of the Texas Property Code.  (Doc. No. 1-1, pp. 13, 14.)  To the extent this claim could be construed as one for wrongful foreclosure (or, in Plaintiff's parlance, "wrongful posting for foreclosure" – *see id.* at 11), Intervenor is entitled to summary judgment.  First, the foreclosure has not occurred and Plaintiff is still in possession of the Property, so a wrongful foreclosure claim cannot lie, and Texas does not recognize an action for "attempted wrongful foreclosure."

*See Foster v. Deutsche Bank Nat'l Trust Co.*, 848 F.3d 403, 406-07 (5th Cir. 2017); *Motten v. Chase Home Fin.*, 831 F. Supp. 2d 988, 1007-08 (S.D. Tex. 2011) (Harmon, J.).  Second, Plaintiff has not submitted any supposedly defective notice of foreclosure sale – either in his state petition or with his summary judgment evidence – so he has presented no evidence of "wrongful posting for foreclosure."  In any event, Plaintiff fails to cite any authority indicating that such a cause of action exists in Texas.

Plaintiff's claim that the defendants violated § 51.002 of the Texas Property Code is also meritless.  Plaintiff's sole contention appears to be that he was not provided with an amount due or a payoff amount at the time the foreclosure sale was noticed.  (Doc. No. 1-1, p. 13.)  Plaintiff has not provided the Court with any evidence of a notice of foreclosure sale that was supposedly deficient.  More importantly, though, § 51.002 does not require that a notice of foreclosure sale include an amount due or payoff amount.  Indeed, federal and Texas courts "routinely find that there is no requirement that the required pre-foreclosure notices set forth the exact amount needed to cure the default."  *Gibson v. U.S. Bank Tr. Nat'l Ass'n*, No. 3:21-cv-02210, 2023 WL 6067430, at *9 (N.D. Tex. Aug. 31, 2023), *adopted*, 2023 WL 6119377 (N.D. Tex. Sept. 16, 2023) (citing *Rhodes v. Wells Fargo Bank, N.A.*, No. 3:10-CV-02347, 2012 WL 5363424, at *19 (N.D. Tex. Oct. 31, 2012) (§ 51.002(d) contains no requirement that a notice of default state the amount of money needed to cure the default); *Buchanan v. Compass Bank*, No. 02-14-34-cv, 2015 WL 222132, at *3 (Tex. App. – Fort Worth Jan. 15, 2015, pet. denied) (there is "no language in the statute that requires notices to include the exact amount owed")).  The statute required that Plaintiff be provided with a notice of intent to accelerate and at least 20 days to cure the default, and that the notice of acceleration be given at least 21 days before any foreclosure

sale.  *See* Tex. Prop. Code § 51.002(b), (d).  Those notices were given (and the foreclosure sale never occurred).  *See* Doc. No. 57, p. 194.[24]

Finally, Plaintiff contended in his state petition that the defendants deprived him of his contractual rights under the Deed of Trust.  (Doc. No. 1-1, p. 14.)  Intervenor's summary judgment evidence demonstrates that all of Plaintiff's rights under the Deed of Trust were observed.  The Deed of Trust appears to provide the same rights as those afforded under Texas law, plus a right of reinstatement which Plaintiff does not contend to have sought to exercise. *See* Doc. No. 57, p. 29 ¶ 18.  The summary judgment evidence and foregoing analysis demonstrate that Plaintiff's rights were not violated.  Summary judgment for Intervenor on these claims is therefore appropriate if the district court does not grant summary judgment based on limitations.

### c. *Misrepresentation of amounts due under the Note.*

Plaintiff also alleged in state court that the amounts due under the Note were misrepresented (and presumably that they were therefore miscalculated).  *See* Doc. No. 1-1, pp. 11, 14 (state petition).  This claim relates to the loan modification and is barred by limitations, as discussed above.  But Intervenor is also entitled to summary judgment on the merits of this claim.

Plaintiff's claim is that Seterus wrongfully added $52,019.76 to Plaintiff's mortgage loan at the time of the modification without explanation, thus misrepresenting the outstanding balance.  (Doc. No. 1-1, pp. 9, 11.)  As discussed above with respect to Intervenor's foreclosure

---

[24] In his state petition, Plaintiff contended that he was not provided with "demand as required under Paragraph 24 of the deed of trust."  (Doc. No. 1-1, p. 10.)  In Plaintiff's Deed of Trust, paragraph 24 deals with subrogation, not default or foreclosure sales.  *See* Doc. No. 57, p. 29.  In any case, Plaintiff had long before been provided with the notice of acceleration, which is the "demand" to which he refers.  (Doc. No. 57, p. 201.)

claim, at the time of the loan modification Seterus added $15,913.54 to Plaintiff's loan balance for unpaid interest due through September 1, 2011 (the date through which Plaintiff's loan had been paid), along with $30,326.70 in escrow deficiency and $5,945.18 in fees.  (Doc. No. 57, pp. 10-11 (Harvey declaration).)  After allowing a credit of $165.66 for a suspense balance, the resulting total was the $52,019.76 that was added.  *See id.*; *id.* at 90 (Harvey exhibit A-8).

Plaintiff's summary judgment evidence contradicts none of this.  No summary judgment evidence indicates that his original principal balance was incorrect, that the unpaid interest was incorrect, that the calculated escrow deficiency was incorrect, that the suspense balance was incorrect, or that the fees were incorrectly assessed.  Plaintiff states in his summary judgment response that he "would show Fannie Mae that the unpaid balance should be $84,349.12" rather than the $108,812.05 balance that Seterus calculated, *see* Doc. No. 61, p. 9, but he offers no evidence or calculation supporting that figure.  Accordingly, he fails to raise a genuine issue of material fact in opposition to summary judgment on this claim.  Summary judgment is appropriate, and the district court should grant it.

Separately and additionally, Plaintiff's deemed admissions further support grant of summary judgment for Intervenor.  Plaintiff is deemed to have admitted that $52,019.76 was properly added to his loan balance at the time of the modification, and that the loan balance due at the time of the modification was $108,812.05.  *See* Doc. No. 57, pp. 244, 246, Requests for Admission 11-13, 29.

### d. Economic duress.

Plaintiff alleged in state court that he signed the loan modification under duress.  *See* Doc. No. 1-1, pp. 9-10, 14.  This claim relates to the loan modification, and so it is barred by limitations as well, but Intervenor is also entitled to summary judgment on the merits.

In Texas, an economic duress claim has four elements: (1) a threat to do something that the threatening party has no legal right to do; (2) some illegal exaction or fraudulent deception; (3) the restraint is imminent and such as to destroy a person's free will without adequate means of protection; and (4) the claimant's financial distress was caused by the party accused of duress. *See McCallum Highlands, Ltd. v. Washington Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995) (citing *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102 (Tex. App. – Dallas 1987, writ ref'd n.r.e.)). Here, Intervenor is entitled to summary judgment for at least two reasons. First, Plaintiff was unquestionably in default on the mortgage loan, and Intervenor and its predecessors in interest therefore had the right to foreclose if Plaintiff failed to pay as required. *See* Doc. No. 57, pp. 19 (Note), 29 (Deed of Trust). Additionally, Plaintiff has presented no evidence or allegation that Intervenor or its predecessors in interest caused Plaintiff's financial distress in the first place (the fourth element): it was Plaintiff's own financial situation that led to his need to seek a loan modification. Indeed, Plaintiff asserted in his state court petition that he was "experiencing financial problems with his business and had fallen behind on his mortgage payments." (Doc. No. 1-1, p. 9.) Intervenor is entitled to summary judgment on Plaintiff's duress claim.

### e. *Declaratory judgment.*

Plaintiff's state court lawsuit invokes the Texas Declaratory Judgment Act. That act is "a procedural mechanism that is inapplicable in federal court." *Bunker Sawmill LLC v. Allgor*, No. 4:22-cv-00457, 2024 WL 1174559, at *5 (S.D. Tex. Mar. 15, 2024) (Hanen, J.); *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998). When a declaratory judgment action filed in state court is removed to federal court, as here, the federal court does not apply the Texas Declaratory Judgment Act, but instead effectively converts the action into one brought under the

federal Declaratory Judgment Act. *See Piazzo v. Allstate Indem. Co.*, 601 F. Supp. 3d 189, 195 (S.D. Tex. 2022) (Edison, M.J.) (citing and quoting *Redwood Resort Props., LLC v. Holmes Co. Ltd.*, No. 3:06-CV-1022-D, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007)).

Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act does not create a standalone cause of action. *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984); *Edwards v. U.S. Bank Nat'l Ass'n*, No. 6:15-cv-02535, 2016 WL 4574585, at *5 (W.D. La. June 28, 2016), *adopted*, 2016 WL 4626252 (W.D. La. Sept. 1, 2016). Nor does the Act provide "an independent ground for jurisdiction; it permits the award of declaratory relief only when other bases for jurisdiction are present." *Johnson v. United States*, 502 F. App'x 412, 419 (5th Cir. 2012) (citing *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir. 1980)). The Act "is merely a vehicle that allows a party to obtain an 'early adjudication of an actual controversy' arising under other substantive law." *Capital One v. Swisher-35 Ltd.*, No. 3:08-CV-1040, 2008 WL 4274499, at *2 (N.D. Tex. Sept. 17, 2008). An actual controversy capable of being adjudicated in the federal courts is required, for a declaratory judgment action relates to the underlying federal cause of action. *See Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990).

Here, the undersigned has already recommended the granting of Intervenor's motion for summary judgment on its claims for foreclosure and breach of contract, as well as on Plaintiff's substantive causes of action. Intervenor is therefore entitled to summary judgment on Plaintiff's declaratory judgment claim as well. *See Mid-Am. Supply Corp. v. Truist Bank*, 660 F. Supp. 3d

594, 602 (E.D. Tex. 2023) (citing *Payne v. Wells Fargo Bank Nat'l Ass'n*, 637 F. App'x 833, 838 (5th Cir. 2016)).

### H.  The district court should grant Plaintiff's **pro se** *motion to dismiss his second counsel.*

Plaintiff has filed a motion to dismiss his second counsel from this case, stating that he has "had difficulty communicating with his current legal counsel of record" and complaining that (among other things) his counsel failed to file an amended complaint or appeal the undersigned's ruling denying Plaintiff's motion for leave to amend the complaint.  *See* Doc. No. 71.  Plaintiff's counsel has not filed any response to this motion.  Plaintiff requests a continuance (discussed in a moment), but does not request a continuance in order to obtain new counsel.  *See id.*  The undersigned recommends that the district court GRANT Plaintiff's motion to dismiss his counsel, with the result that Plaintiff will proceed *pro se* unless he hires another attorney.  As a result, however, Plaintiff should be required to abide by all court deadlines while representing himself, like any other federal litigant.

### I.  Plaintiff's **pro se** *motion for continuance (as construed, for leave to amend).*

Finally, Plaintiff moves for a "continuance or extension," so that he can "obtain the remaining certifications as requested by the Intervenor in this case which will support Plaintiff's filing of the Amended complaint."  (Doc. No. 70, p. 3.)  The undersigned construes Plaintiff's motion as one for leave to amend the complaint.

Plaintiff proposes to make six new claims, all ultimately seeking a declaration that the Note is null and void and that title to the Property should be quieted in Plaintiff's favor: (1) common law fraud or forgery by JPMorgan Chase Bank when it assigned the Deed of Trust (Doc. No. 70, pp. 8-9); (2) common law fraud in the use of an allonge by Rushmore during

Plaintiff's 2018 bankruptcy proceeding (*id*. at 9-10); (3) common law fraud or forgery by

Rushmore by virtue of an alteration to an allonge (*id*. at 10-11); (4) common law fraud by

Rushmore for allegedly selling the Note twice, to two different companies (*id*. at 11-12); (5)

common law fraud by JPMorgan Chase Bank for allegedly preparing a second allonge to "cover

up" a previous forged allonge (*id*. at 12-13); and (6) a broken chain of the Deed of Trust, because

there are allegedly no recorded assignments of the Deed of Trust that track the allonges assigning

ownership of the Note (*id*. at 13-15).

     For its part, Intervenor opposes the motion, arguing that Plaintiff fails to explain why he

did not amend his complaint before the amendment deadline or to demonstrate good cause for

allowing the filing of an amended complaint now.  (Doc. No. 72, pp. 5-6.)  Intervenor also notes

that this case has endured for nearly two years and that it would suffer prejudice for further

delay.  *Id*. at 6-7.  The district court should deny Plaintiff's motion.

     Federal Rule of Civil Procedure 16(b)(4) "'governs amendment of pleadings after a

scheduling order deadline has expired.'"  *Olivarez v. T-Mobile USA, Ltd.*, 997 F.3d 595, 602 (5th

Cir. 2021) (quoting *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 535

(5th Cir. 2003)); *Signet Mar. Corp. v. Nykanen*, Civ. No. H-23-1269, 2023 WL 7093028, at *2

(S.D. Tex. Oct. 26, 2023) (Rosenthal, J.).

     Under Rule 16(b)(4), a scheduling order, once issued, "may be modified only for good

cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The rule's good cause standard

requires a showing by the movant that the scheduling order's deadlines "cannot reasonably be

met despite the diligence of the party needing the extension."  *S&W Enters.*, 315 F.3d at 535

(quotation omitted).  If the movant demonstrates good cause to modify the scheduling order, the

more liberal amendment standard of Federal Rule of Civil Procedure 15(a) then applies to the

court's subsequent decision whether to grant leave to amend.  *Olivarez*, 997 F.3d at 602.
Plaintiff bears the burden of demonstrating good cause, as the party seeking to modify the
scheduling order to permit him to file an amended complaint.  *See Squyres v. Heico Cos., L.L.C.*,
782 F.3d 224, 236-27 (5th Cir. 2015); *HCC Ins. Holdings, Inc. v. Remeika*, No. H-15-2564, 2016
WL 4272345, at * 4 (S.D. Tex. Aug. 15, 2016) (Rosenthal, J.).

      "Courts will more carefully scrutinize a party's attempt to raise new theories of recovery
by amendment when the opposing party has filed a motion for summary judgment."  *Parish v.
Frazier*, 195 F.3d 761, 764 (5th Cir. 1999).  "Where a party seeks leave to amend after the filing
of a motion for summary judgment, 'there is likely to be disruption to the proceedings and
prejudice to the other party.'"  *League v. HSBC Bank USA*, No. 4:20-cv-352, 2021 WL 2949669,
at *2 (E.D. Tex. Mar. 22. 2021) (quoting *Conklin v. Novartis Pharms. Corp.*, No. 9:11-cv-178,
2012 WL 4127295, at *5 (E.D. Tex. Sept, 18, 2012)); *Little v. Liquid Air Corp.*, 952 F.2d 841,
846 (5th Cir. 1992).

      Rule 16(b)(4)'s good cause standard is viewed in light of four factors: the explanation for
the failure to timely move for leave to amend; the importance of the amendment; potential
prejudice in allowing the amendment; and the availability of a continuance to cure such
prejudice.  *Crown Castle Fiber LLC v. City of Pasadena*, No. H-20-3369, 2022 WL 3040417, at
*5 (S.D. Tex. Aug. 2, 2022) (Hittner, J.) (citing *S&W Enters.*, 315 F.3d at 355).  Moreover, the
good cause standard requires the party seeking relief to show that "the deadlines cannot
reasonably be met despite the diligence of the party needing the extension."  *Squyres*, 782 F.3d at
237 (quoting *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013) (per curiam)).
"'The most important factor bearing on the "good cause" inquiry under Rule 16(b)(4) is whether
the party seeking to modify the scheduling order can show that it has been diligent in pressing its

claims but despite its diligence could not reasonably have met the scheduling deadline.'" *Dennis v. Fiesta Mart, LLC*, No. 4:23-cv-00720, 2024 WL 197690, at *2 (S.D. Tex. Jan. 18, 2024) (Edison, M.J.) (quoting *Allergan Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-cv-1455, 2017 WL 119633, at *3 (E.D. Tex. Jan. 12, 2017)).

In a prior order, the Court denied Plaintiff's counseled motion for leave to amend the complaint. (Doc. No. 68.) In that order, the Court noted that Plaintiff had failed to show why he did not meet the deadline for amendment of pleadings. *Id.* at 9-13. Plaintiff offers no explanation for that failure in his current motion, either. Additionally, Plaintiff's own motion and exhibits reveal that documents upon which Plaintiff seeks to rely for support of his new claims were in his possession or were otherwise available to him before he filed his original suit in state court, and he fails to explain why his proposed new claims were not part of his original state lawsuit. For example, the purportedly "forged" assignment of the Note by JPMorgan Chase was provided directly to Plaintiff in 2018 (Doc. No. 70, p. 9), as was Rushmore's allegedly fraudulent allonge, which Rushmore filed in its proof of claim in Plaintiff's 2018 bankruptcy case (Doc. No. 70, pp. 10-11). Plaintiff also outlined his forgery contentions in a September 6, 2021 letter to Rushmore, which he included in his submitted summary judgment evidence here. (Doc. No. 61-8, pp. 4-6.) The identity fraud complaint that Plaintiff filed also includes these same allegations. (Doc. No. 61-9, p. 9.) Plaintiff's failure to explain why he failed to lodge his claims in his original state court petition further evinces his failure to demonstrate good cause for failing to timely amend his complaint in federal court to include them. The undersigned concludes that the first Rule 16(b)(4) factor weighs against Plaintiff.

The second factor considers the importance of the amendment. Plaintiff's proposed amendment would raise claims which, according to him, would result in the voiding of the Note

and the vesting in Plaintiff of title to the Property.  *See* Doc. No. 70, pp. 8-15.  While not discounting the importance of the amendment to Plaintiff, importance is only one factor in the Rule 16(b) analysis.  *Cf. Grant v. City of Houston*, 625 F. App'x 670, 680 (5th Cir. 2015).

The third and fourth factors weigh against Plaintiff.  Plaintiff states, without elaboration, that Intervenor would not be prejudiced by the granting of his motion.  (Doc. No. 70, p. 4.)  But as noted during briefing and decision on the prior motion for leave to amend, further delay would ensue from permitting an amendment, and depending on Intervenor's response, additional dispositive motions might need to be filed, considered, and ruled upon.  Additional discovery might also be required, and discovery costs imposed on the responding party are entitled to consideration in determining the issue of prejudice.  *See Allergan*, 2017 WL 119633, at *7.  And as noted during consideration of Plaintiff's prior motion for leave to amend, a continuance would not ameliorate any prejudice from the granting of Plaintiff's motion because, for Intervenor, delay *is* the prejudice – further delay through a continuance would only compound that prejudice, not cure it.

Weighing the four factors, the undersigned concludes that Plaintiff has not demonstrated good cause to amend his complaint.  Plaintiff could have brought any claim regarding defects in the ownership of the Note as part of his original state lawsuit, and he fails to explain why he did not include such a claim when he sued to stop foreclosure on the Property.  He further fails to explain why he failed to amend his complaint in federal court before the amendment deadline. Although the new claim or claims might be important, Intervenor – who has already moved for summary judgment – would suffer prejudice (in the form of cost and delay) from having to defend against new claims.  On balance, Plaintiff has failed to demonstrate good cause, and the undersigned recommends denial of his motion for leave to amend his complaint.

In any event, Plaintiff's proposed amendments would be futile, for several reasons.  First, Plaintiff, as the borrower, lacks standing to challenge the assignment of the Note based on any alleged fraud in the assignment chain.  *Cf. Hagood v. Countrywide Home Loans, Inc.*, No. A-17-CA-00784-SS, 2017 WL 11220080, at *2 (W.D. Tex. Oct. 6, 2017) (citing *Reinagel v. Deutsche Bank Nat'l Tr. Co.*, 735 F.3d 220, 228 (5th Cir. 2013)).  He also offers nothing more than speculative musings that one or more note alonges were forged, not a nonconclusory "who, what, when, where, and how" of any supposed fraud or forgery.  *Cf. Morgan v. Gov't Nat'l Mortg. Ass'n*, Civ. No. H-15-1803, 2016 WL 3058301, at *3-4 (S.D. Tex. May 31, 2016) (Miller, J.); *Jemison v. CitiMortgage, Inc.*, Civ. No. H-13-2475, 2015 WL 251754 (S.D. Tex. Jan. 20, 2015) (Rosenthal, J.); Fed. R. Civ. P. 9(b).  Additionally, Plaintiff does not claim that Intervenor is not now actually the holder of the Note (which is endorsed in blank).  And finally, Plaintiff lacks standing to challenge any assignments of the Deed of Trust, because he is not a party to those assignments and because a valid assignment of the Deed of Trust is not required in order for Intervenor, as the holder of the Note, to foreclose on the Property – the "mortgage follows the note."  Thus, even if Intervenor did not have a recorded interest in the Property, Intervenor could still foreclose if it is the holder of the Note secured by the Deed of Trust.  *See SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n*, 881 F.3d 933, 941, 942 (5th Cir. 2018) ("when the foreclosing party is the holder of the promissory note, any defects in the Deed assignment are irrelevant…."); *Holloway v. Wells Fargo Bank, N.A.*, No. 3:12-CV-2184-G, 2013 WL 1187156, at *6 (N.D. Tex. Feb. 26, 2013).  For at least these reasons, Plaintiff's proposed amendment would be futile; his bid for leave to amend should be denied under Federal Rule of Civil Procedure 15(a) and also because the amendment would not be "important" for purposes of Rule 16(b)(4).  *Cf. Filgueira*, 734 F.3d at 423 (importance factor weighed against movant because

proposed amendments would be futile); *McDougal v. Trinity Fin. Servs., LLC*, No. 3:19-CV-

2256, 2023 WL 3573319, at *4 (N.D. Tex. May 1, 2023), *adopted*, 2023 WL 3575646 (N.D.

Tex. May 19, 2023) ("even if Plaintiff could theoretically assert a substantive claim, under the

factual bases she asserts she is not entitled to relief, so amendment would be futile"); *Dalrymple*

*v. United States Postal Serv.*, Civ. No. 18-14237, 2020 WL 1181845, at *7 (E.D. La. Mar. 12,

2020) (because proposed amendment was futile, it was not "important").

### J. Conclusion and recommendations.

The district court should take the following actions:

- GRANT Intervenor's amended motion for summary judgment (Doc. No. 56) and allow
  Intervenor to foreclose on the Property under the security instrument and § 51.002 of the
  Texas Property Code;

- DISMISS all of Plaintiff's claims (*see* Doc. No. 1-1);

- ORDER Intervenor to submit a proposed judgment, including a provision directing the
  payment of any excess proceeds to the United States after the Property is sold and
  Intervenor's lien is satisfied;

- ORDER Intervenor to file a separate application for attorney fees that establishes the
  amount of the reasonable and necessary attorney fees and costs that it has incurred, with
  supporting evidence, based on an acceptable method for calculating attorney fees under §
  38.001(b)(8) of the Texas Civil Practice and Remedies Code and under the Note and
  Deed of Trust;

- GRANT Plaintiff's *pro se* motion to dismiss his counsel (Doc. No. 71); and

- DENY Plaintiff's *pro se* motion for continuance or leave to amend (Doc. No. 70).

**K. Notice.**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on April 11, 2024.

MITCHEL NEUROCK
United States Magistrate Judge